

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00408-CV

TOWN OF FLOWER MOUND, TEXAS, HARLAN JEFFERSON, TOWN MANAGER AND CHARLES SPRINGER, ASSISTANT TOWN MANAGER/CHIEF FINANCIAL OFFICER

APPELLANTS
AND APPELLEES

V.

REMBERT ENTERPRISES, INC.

APPELLEE
AND APPELLANT

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## OPINION ON REHEARING

----------

### I. Introduction

After considering Appellants' motion for rehearing, we deny the motion but withdraw our prior opinion and judgment of December 8, 2011, and substitute the following.

In this interlocutory appeal, Appellants Town of Flower Mound, Texas; Harlan Jefferson, Town Manager; and Charles Springer, Assistant Town Manager/Chief Financial Officer (collectively, Appellants) challenge the trial court's partial denial of their plea to the jurisdiction in the lawsuit filed against them by Appellee Rembert Enterprises, Inc. (Rembert).[1]  Appellants contend in five issues that governmental immunity protects it from Rembert's declaratory judgment, breach of contract, and attorney's fee claims and that Jefferson and Springer have derivative immunity.  In its cross appeal, Rembert argues that the trial court erred by partially granting Appellants' plea to the jurisdiction against Rembert's inverse condemnation claim. We affirm in part and reverse in part.

## II. Background

Rembert is the developer of a residential subdivision in Flower Mound (the Property).  When Rembert applied to Flower Mound for approval of its development permits, Flower Mound required Rembert to construct Auburn Drive on the property and other land Rembert did not initially own as a condition of approval.  Rembert and Flower Mound thereafter entered into three separate development agreements, and Rembert constructed Auburn Drive as set forth in those agreements.  Flower Mound paid Rembert fifty percent of the Auburn Drive construction cost, but Rembert alleges in its third amended petition that the August 4, 2008 Development Agreement (the Agreement) required Flower Mound to reimburse Rembert the full

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2011) (permitting interlocutory appeal from an order granting or denying a plea to the jurisdiction filed by a governmental unit).

2

cost of constructing Auburn Drive through a combination of impact fee credits and direct reimbursement. Rembert alleges that Flower Mound's failure to fully reimburse the Auburn Drive construction costs is a breach of the Agreement or, alternatively, constitutes a compensable taking. Rembert further seeks judicial declarations (1) that the Impact Fee Act,[2] the Agreement, and Flower Mound's ordinances required Flower Mound to "reimburse Rembert for 100% of the cost to construct Auburn Drive" and (2) that Flower Mound, Jefferson, and Springer "had a ministerial obligation to forward the sums owed to [Rembert], and their refusal to do so was unauthorized and illegal."

Appellants answered Rembert's petition and filed a plea to the jurisdiction that they amended on two occasions. The trial court conducted an evidentiary hearing on Appellants' second amended plea to the jurisdiction and granted the plea in part. Appellants appeal the trial court's partial denial of their plea to the jurisdiction, and Rembert appeals the trial court's partial grant of Appellants' plea.

### III. Standard of Review

Whether the trial court had subject matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without

---

[2]*See* Tex. Loc. Gov't Code Ann. §§ 395.001–.021 (West 2008), .022 (West Supp. 2011); .024–.079 (West 2008), .081 (West Supp. 2011).

3

regard to whether the claims asserted have merit. *Id.* Although the claims may form the context in which a plea to the jurisdiction is raised, the plea should be decided without delving into the merits of the case. *Id.*

"[S]overeign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued[,] unless the state consents to suit."[3] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). In Texas, sovereign immunity has two components: immunity from liability and immunity from suit. *Tooke*, 197 S.W.3d at 332; *Miranda*, 133 S.W.3d at 224. Immunity from liability "bars enforcement of a judgment against a governmental entity" and is an affirmative defense. *Tooke*, 197 S.W.3d at 332; *Miranda*, 133 S.W.3d at 224. Immunity from suit, on the other hand, "bars suit against the [governmental] entity altogether" because it "deprives a court of subject matter jurisdiction." *Tooke*, 197 S.W.3d at 332; *Miranda*, 133 S.W.3d at 224. This appeal involves immunity from suit.

When a governmental entity such as Flower Mound enters into a contract, it waives immunity from liability but does not waive immunity from suit unless the legislature has clearly and unambiguously waived the governmental entity's immunity from suit. *Tooke*, 197 S.W.3d at 332–33. To invoke the trial court's subject matter jurisdiction over a claim arising out of a governmental entity's

---

[3]Courts often use the terms interchangeably, but governmental, rather than sovereign, immunity is at issue in this case. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 329 n.11 (Tex. 2006) (distinguishing the State's sovereign immunity from the governmental immunity enjoyed by political subdivisions of the State such as counties, cities, and school districts).

contractual obligations, the plaintiff must allege a valid waiver of immunity from suit and plead sufficient facts demonstrating the trial court's jurisdiction. *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Miranda*, 133 S.W.3d at 226. If, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id.* at 227; *see also Bland*, 34 S.W.3d at 555 (stating that "[t]he court should, of course, confine itself to the evidence relevant to the jurisdictional issue"). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 805 (Tex. App.—Fort Worth 2008, no pet.) (citing *Miranda*, 133 S.W.3d at 228). If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the factfinder. *Miranda*, 133 S.W.3d at 227–28. But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## IV. Breach of Contract

Appellants contend in their third issue that the trial court does not have subject matter jurisdiction over Rembert's breach of contract claim because the

Agreement does not involve the provision of goods and services as required for a waiver of immunity under local government code chapter 271.

Section 271.152 of the local government code states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't. Code Ann. § 271.152 (West 2005). A "[c]ontract subject to this subchapter" is defined, in relevant part, as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." *Id.* § 271.151(2) (West 2005).

Appellants argue that, even though Rembert used goods and services to construct Auburn Drive, the Agreement is not a contract for "goods or services" because it is ultimately a contract for the conveyance of improved real property.[4] But the Agreement involved more than the conveyance of improved real property, and this distinction is illustrated by two supreme court opinions concerning the provision of goods or services to a municipality by contract. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829 (Tex. 2010); *Ben Bolt-Palito*

---

[4] *See, e.g., Brown Water Marine Serv., Inc. v. Aransas Cnty. Navigation Dist. No. 1*, No. 13-07-00055-CV, 2008 WL 1822727, at *2 n.1 (Tex. App.—Corpus Christi Apr. 24, 2008, pet. denied) (mem. op.) (holding lease of property not goods or services); *Somerset Indep. Sch. Dist. v. Casias*, No. 04-07-00829-CV, 2008 WL 1805533, at *3 (Tex. App.—San Antonio Apr. 23, 2008, pet. denied) (mem. op.) (holding contract was one for the conveyance of land even though the seller was required to perform environmental cleanup as a condition of closing).

6

*Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdiv. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320 (Tex. 2006).

In *Ben Bolt*, ninety-two governmental entities formed an insurance fund to provide casualty insurance to fund participants. *See* 212 S.W.3d at 322. Fund members elected a governing board, and a board subcommittee resolved self-insurance claim disputes. *See id.* at 327. The Fund argued that its immunity from suit was not waived by local government code section 271.152 because no goods or services were provided to the Fund under the insurance contract with a member entity. *See id.* Disagreeing, the supreme court held that the Fund's immunity from suit was waived because the members provided services to the Fund in that the members elected the governing board whose subcommittee resolved claim disputes. *See id.* Thus, in *Ben Bolt*, even though the service provided to the Fund was not the primary purpose of the contract, the members' provision of claim dispute services was sufficient to fall within the waiver of immunity under local government code section 271.152. *See id.* at 327–28.

In *Kirby Lake*, several developers entered into agreements with the Clear Lake Water Authority. 320 S.W.3d at 832. The development agreements required the developers to build water and sewer facilities and lease the facilities to the Water Authority free of charge. *Id.* The court of appeals held that the developers' "agreement to hire third parties to construct the Facilities and to build the streets, roads, and bridges" was "sufficient to constitute the provision of services to the [Water] Authority." *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, 256

7

S.W.3d 735, 751 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd) (op. on reh'g). Affirming and holding that the Water Authority's immunity from suit was waived by section 271.152, the supreme court stated:

> We agree with the court of appeals that the Agreements entail services provided directly to the [Water] Authority. The Developers contracted to construct, develop, lease, and bear all risk of loss or damage to the facilities, obligations far more concrete than those at issue in *Ben Bolt*. We therefore hold that the Agreements contemplate the provision of services under the statute.

*Kirby Lake*, 320 S.W.3d at 839 (internal citation omitted).

In this case, the Agreement required Rembert to "construct Auburn Drive . . . together with all related appurtenances in addition to all other facilities necessary to serve the Property," to "acquire in fee simple all rights-of-way necessary for the Right-Turn Lane," to "design and construct the Right-Turn Lane in accordance with [Flower Mound]'s engineering standards," and to "work with TxDOT and [Flower Mound] to determine the proper location and alignment of the Right-Turn Lane." Clearly, the Agreement required Rembert to provide services to Flower Mound in the manner, at least, of constructing Auburn Drive; designing and constructing the Right-Turn Lane; and working with TxDOT concerning the location, alignment, design, and construction of the Right-Turn Lane. *See id.* at 839–40; *Ben Bolt*, 212 S.W.3d at 327–28; *City of N. Richland Hills v. Home Town Urban Partners, Ltd.*, 340 S.W.3d 900, 908–09 (Tex. App.—Fort Worth 2011, no pet.) (holding agreement to hire third party contractors, among other things, constituted provision of services to city); *Wight Realty Interests, Ltd. v. City of Friendswood*, 333 S.W.3d 792, 797 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Friendswood Dev. Co.*, 256 S.W.3d

at 751; *see also City of San Antonio v. Lower Colo. River Auth.*, No. 03-10-00085-CV, 2011 WL 3307509, at *3 (Tex. App.—Austin July 29, 2011, no pet.) (holding contract was for goods or services because it required the water authority "to identify, pursue, and fund feasibility studies that subsequently became LCRA's exclusive property").

Appellants attempt to distinguish *Ben Bolt*, *Kirby Lake*, and other similar cases by arguing that the contracts at issue in those cases differ from the contract at issue here because the contract here is "nothing more than a restatement of independent obligations that Rembert must undertake under the Town's development regulations as part of the land-development process." However, Appellants' argument requires a close examination of the merits of Rembert's lawsuit beyond a review of Rembert's pleadings and the jurisdictional evidence, an inquiry the supreme court has cautioned against. *See Bland*, 34 S.W.3d at 554. Furthermore, Appellants' contention ignores one of the fundamental fact issues underlying its dispute with Rembert, that is, whether the construction of Auburn Drive was actually required by Flower Mound's ordinances. Appellants argue on appeal and presented evidence to the trial court that Flower Mound's ordinances required the construction of Auburn Drive, but Rembert argues on appeal and pointed to other evidence in the trial court that the property already had existing access to the north and south at the time Rembert purchased it.[5] Thus, one

---

[5]Appellants argue that "Rembert fails to distinguish between the existing road conditions suitable for the existing Country Meadow Estates Mobile Home Park

9

possibility is that the factfinder will determine that Flower Mound's ordinances did not require the construction of Auburn Drive.[6]   Should that occur, then the Agreement is not at all a memorialization of Flower Mound's ordinances. Therefore, Appellants' contention that the Agreement merely memorialized Rembert's development obligations under Flower Mound's ordinances cannot be resolved in this pretrial plea to the jurisdiction proceeding.  *See generally Miranda*, 133 S.W.3d at 227 (stating trial court cannot grant plea to jurisdiction if there is a fact question concerning the jurisdictional issue).

We hold, based on Rembert's third amended petition and the parties' plea to the jurisdiction evidence, that local government code section 271.152 waives Flower Mound's immunity from suit with regard to the Agreement because the Agreement is a contract for the provision of services to Flower Mound within the meaning of that statute.  *See* Tex. Loc. Gov't Code Ann. §§ 271.151(2), .152; *Kirby Lake*, 320 S.W.3d at 839–40; *Ben Bolt*, 212 S.W.3d 327–28; *Home Town*, 340 S.W.3d at 908–09; *Friendswood Dev. Co.*, 256 S.W.3d at 751.   We overrule Appellants' third issue.

### V.  Declaratory Judgment and Individual Defendants

Appellants contend in their first and fifth issues that the trial court did not have subject-matter jurisdiction over Rembert's requested declarations because

---

located on the Property and the road access needed for the proposed 52-lot Casa de Rembert residential subdivision."  But this is a question of fact for the factfinder.

[6]We do not imply that the factfinder will or should make this determination and note only that it is one possibility.

they are nothing more than a restatement of Rembert's breach of contract claim and because Jefferson and Springer have derivative immunity. Appellants argue in part of their fourth issue that Rembert may not recover attorney's fees for declaratory judgment claims over which the trial court did not have subject-matter jurisdiction. Because Appellants' first, fourth, and fifth issues are related, we address them together.

## A. Applicable Law

The Declaratory Judgments Act contains a waiver of immunity from suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2008); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009). But this waiver is a limited one, and determining whether a particular request for declaratory relief falls within this waiver of immunity is often complicated.

Immunity from suit is waived if a party joins a governmental entity and seeks a declaration that an ordinance or statute is invalid, based on either constitutional or nonconstitutional grounds. *See Heinrich*, 284 S.W.3d at 373 n.6; *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007); *Lakey v. Taylor*, 278 S.W.3d 6, 15 (Tex. App.—Austin 2008, no pet.); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148–49 (Tex. 1995). Likewise, immunity from suit is waived if a party joins a governmental entity and seeks a declaration construing an ordinance or statute. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–34 (Tex. 2010) (noting that governmental entities are to be joined in suits to construe their legislative pronouncements and that immunity from suit is waived

11

in such suits) (citing *Heinrich*, 284 S.W.3d at 373 n.6); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 445–46 (Tex. 1994) (stating that governmental entities are not immune from suits seeking a construction of their legislative pronouncements). However, governmental immunity generally bars suits for retrospective monetary relief, and private parties cannot circumvent a governmental entity's immunity from suit by characterizing a suit for money damages as a declaratory judgment claim. *See Heinrich*, 284 S.W.3d at 368–69, 371; *see also City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) ("The only injury the retired firefighters allege has already occurred, leaving them with only one plausible remedy—an award of money damages. As they assert no right to payments from the City in the future, they lack standing to seek a statutory interpretation on behalf of those currently employed."). Therefore, if a litigant joins a governmental entity and seeks an otherwise proper declaratory judgment construing or invalidating a statute, the claim is nonetheless barred by governmental immunity if the declaration sought would have the effect of establishing a right to relief against the governmental entity for which governmental immunity has not been waived. *See Heinrich*, 284 S.W.3d at 372; *Williams*, 216 S.W.3d at 828–29; *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 360 (Tex. App.—Austin 2009, pet. denied). Furthermore, a party may not seek a declaratory judgment "only in an attempt to have the trial court decide its breach-of-contract claim." *IT-Davy*, 74 S.W.3d at 860 (holding that the limited waiver under the Declaratory Judgment Act recognized in *Leeper* "does not allow private parties to

12

sue the State for money damages"); *see also City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 368–69 (Tex. App.—Fort Worth 2009, no pet.) (holding that immunity is not waived for a requested declaration that the plaintiff "did not materially breach the [contract] or otherwise fail to meet its obligations to the City").

"Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority[,]" but "such suits are not suits against the State" because "suits to compel state officers to act within their official capacity do not attempt to subject the State to liability." *IT-Davy*, 74 S.W.3d at 855 (citations omitted). "In contrast, declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State" and "cannot be maintained without legislative permission." *Id.* at 855–56.

## B. Discussion

In its third amended petition, Rembert requested a judicial declaration that the Impact Fee Act, the Agreement, and Flower Mound's ordinances required Flower Mound to "reimburse Rembert for 100% of the cost to construct Auburn Drive" and that Flower Mound, "Jefferson[,] and Springer had a ministerial obligation to forward the sums owed to [Rembert], and their refusal to do so was unauthorized and illegal." However, Rembert similarly alleged in its third amended petition that Flower Mound breached the Agreement and that Rembert is therefore entitled to recover the amount Flower Mound owed it under the Agreement.

13

Rembert's requested declarations merely recast Rembert's claim for breach of the Agreement. *See IT-Davy*, 74 S.W.3d at 860; *NuRock*, 293 S.W.3d at 368–69.

Rembert attempts to distinguish its declaratory judgment claim from its breach of contract claim by arguing that a judicial interpretation of the Impact Fee Act and Flower Mound ordinances is required to determine whether Flower Mound is required to reimburse Rembert fifty or one hundred percent of the cost of constructing Auburn Drive. "But in every suit against a governmental entity for money damages, a court must first determine the parties' contract or statutory rights; if the sole purpose of such a declaration is to obtain a money judgment, immunity is not waived." *Williams*, 216 S.W.3d at 829 (citing *IT-Davy*, 74 S.W.3d at 860). Thus, although the Declaratory Judgments Act typically waives immunity when the construction of a statute or ordinance is involved, *see First State Bank of DeQueen*, 325 S.W.3d at 633–34, the trial court in this case must construe the Impact Fee Act, Flower Mound's ordinances, and the Agreement to determine whether Flower Mound breached the Agreement. Thus, Rembert's declaratory judgment claim is merely a recast of its breach of contract claim, and immunity has not been waived. *See Williams*, 216 S.W.3d at 829; *IT-Davy*, 74 S.W.3d at 860; *NuRock*, 293 S.W.3d at 368–69.

Rembert also contends that Flower Mound's immunity has been waived because governmental entities must be joined in suits to construe their legislative pronouncements. But as previously discussed, the construction of the ordinances will occur as part of and is arguably dispositive of Rembert's breach of contract

14

claim against Flower Mound, and Flower Mound is already a party to the case for that purpose. Furthermore, Rembert's reliance on *City of Crowley v. Ray* is misplaced because that case involved a claim for liability against a third-party engineer rather than the city; the city was a party only because the construction of city documents was at issue and pertained to the engineer's potential liability. *See* No. 02-09-00290-CV, 2010 WL 1006278, at *1, *5 (Tex. App.—Fort Worth Mar. 18, 2010, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (requiring joinder of "all persons who have or claim any interest that would be affected by the declaration"). We hold that the trial court erred by denying Appellants' plea to the jurisdiction as to Rembert's request for a judicial declaration that the Impact Fee Act, Flower Mound's ordinances, and the Agreement required Flower Mound to "reimburse Rembert 100% of the cost to construct Auburn Drive." We sustain Appellants' first issue.

Appellants further contend that because the trial court lacked subject-matter jurisdiction over Rembert's claim for declaratory relief against it, the trial court also lacked subject-matter jurisdiction over the claims against Jefferson and Springer. Rembert, citing *Heinrich*, 284 S.W.3d at 378–79, responds that Jefferson and Springer do not have immunity because the claim against them is based on their alleged illegal conduct. Specifically, Rembert argues that Jefferson and Springer had a ministerial duty to sign the check to Rembert for the additional amounts owed and that "[t]his situation is similar to the one in *Heinrich* where the individually named defendants did not enjoy immunity where they refused to pay the individual

15

plaintiff in accordance with the terms of the statute." But the claim in *Heinrich* differs from the claim against Jefferson and Springer in two significant ways. First, Heinrich alleged entitlement to future pension benefits and did not seek only a retrospective remedy. *See id.* at 377 (holding claim for prospective benefits must be against individual officials in their official capacity). Here, Rembert seeks only retrospective relief in the form of reimbursement of the cost of constructing Auburn Drive. Second, Heinrich's allegation involved a statutory rather than a contractual duty. *See id.* at 369. "[D]eclaratory-judgment suits against state officials 'allegedly act[ing] without legal or statutory authority'" are permissible, but "'declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State'" and are not permissible as *ultra vires* suits against individuals in their official capacity. *See id.* at 371–72 (quoting *IT-Davy*, 74 S.W.3d at 855–56). Here, Rembert's request for a declaration that Jefferson and Springer had a ministerial duty to issue payment under the Impact Fee Act, the applicable ordinances, and the Agreement is an impermissible recasting of Rembert's breach of contract claim and another manner of seeking retrospective relief against Flower Mound, and that claim must be brought against Flower Mound rather than the individual officers. *See id.* at 371–72; *IT-Davy*, 74 S.W.3d at 855–56. We sustain Appellants' fifth issue.

Because we have held that the trial court did not have subject-matter jurisdiction over Rembert's declaratory judgment claims, we also sustain the portion

16

of Appellants' fourth issue relating to Rembert's claim for attorney's fees based on its request for declaratory judgment. *See Home Town*, 340 S.W.3d at 913 (holding party could not recover attorney's fees for prosecuting claims for which the city's immunity had not been waived).

## VI. Impact Fee Act Claim

Appellants argue in their second issue and the remainder of their fourth issue that the trial court did not have subject-matter jurisdiction over Rembert's Impact Fee Act claim or Rembert's corresponding request for attorney's fees. However, Rembert unequivocally pleaded in the trial court and asserted in its appellate brief that it does not allege a claim under the Impact Fee Act, and we do not read Rembert's third amended petition to assert a claim under the Impact Fee Act.[7] Instead, as we understand Rembert's pleading, the Impact Fee Act is relevant because Appellants contend that the Impact Fee Act and Flower Mound's ordinances limit Rembert's reimbursement to fifty percent. As discussed above, that dispute will be resolved as part of Rembert's breach of contract claim. Thus, we overrule Appellants' second issue and the remainder of their fourth issue. *See* Tex. R. App. P. 47.1 (requiring appellate court to address "every issue raised and necessary to final disposition of the appeal").

---

[7]Rembert pleaded in its third amended petition that it "is not seeking an impact fee refund under § 395.025, Tex. Loc. Govt. Code" and wrote in its appellate brief that "Rembert is not making a 'claim' under Chapter 395."

# VII. Inverse Condemnation

Rembert contends in its sole cross-issue that the trial court erred by granting Appellants' plea to the jurisdiction as to Rembert's inverse condemnation claim.

## A. Applicable Law

A prohibition against taking private property for public use without just compensation is set forth in article I, section 17 of the Texas constitution, which provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17; *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). Takings are classified as either physical or regulatory. *Mayhew*, 964 S.W.2d at 933; *Sefzik v. City of McKinney*, 198 S.W.3d 884, 891 (Tex. App.—Dallas 2006, no pet.). A physical taking is an unwarranted physical appropriation or invasion of the property. *Mayhew*, 964 S.W.2d at 933. A compensable regulatory taking can occur when a governmental entity imposes restrictions that either deny a property owner all economically viable use of his property or unreasonably interfere with the owner's right to use and enjoy the property. *Id.* at 935. A distinct category of regulatory taking occurs when the government conditions the approval of a permit or some other type of governmental approval on an exaction from the approval-seeking landowner. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 548, 125 S. Ct. 2074, 2087 (2005) (referring to "land-use exaction" taking theory); *Dolan v. City of Tigard*, 512 U.S. 374, 377–80, 114 S. Ct. 2309, 2312–14 (1994) (permit to expand store and parking lot

18

conditioned on dedication of portions of property for greenway and bicycle and pedestrian pathway); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 827–28, 107 S. Ct. 3141, 3143–44 (1987) (permit to build larger residence on beachfront property conditioned on dedication of easement allowing public to traverse strip of property). Specifically, an exaction occurs if a governmental entity requires an action by a landowner as a condition to obtaining governmental approval of a requested land development. *Town of Flower Mound v. Stafford Estates, L.P.*, 71 S.W.3d 18, 30 (Tex. App.—Fort Worth 2002), *aff'd*, 135 S.W.3d 620, 630 (Tex. 2004) (citing *Dolan*, 512 U.S. at 377, 114 S. Ct. at 2312–13, and *Nollan*, 483 U.S. at 827, 107 S. Ct. at 3143).

> As stated by the supreme court in *Stafford*,

> conditioning government approval of a development of property on some exaction is a compensable taking unless the condition (1) bears an essential nexus to the substantial advancement of some legitimate government interest and (2) is roughly proportional to the projected impact of the proposed development.

*Town of Flower Mound v. Stafford Estates, L.P.*, 135 S.W.3d 620, 634 (Tex. 2004).

## B. Discussion

In its third amended petition, Rembert alleged that "the number of vehicular trips from the houses in the Subdivision represent 5% or less of the capacity of the roadways Rembert was required to construct by [Flower Mound]," that "Rembert was coerced into signing (and did not consent to) the boilerplate waiver and release language to the extent [Flower Mound] was considering paying Rembert less than 100% of the Auburn Drive costs," and that "Rembert's understanding at the time the

19

Agreement was signed was that Rembert would be reimbursed or credited 100% of the roadway construction costs based on the express terms of the Agreement and Chapter 42-78 of the [Flower Mound] Code." Rembert also alleged as follows:

> In the alternative, the construction cost required of Rembert for roadways related to the Subdivision does not meet the proportionality requirement for an exaction under Article I, Section 17 of the Texas Constitution. Rembert is entitled to recover from [Flower Mound] the total street construction costs incurred by Rembert related to the Subdivision (or at a minimum, 95% of the cost). [Flower Mound] does not enjoy immunity from constitutional violations for illegal exactions.

Under facts very similar to this case, the supreme court held in *Stafford* that Flower Mound was required to compensate Stafford for the cost of rebuilding a road abutting but not within Stafford's development. *See id.* at 645. Flower Mound, as a condition of its approval of the plats for the second and third phases of Stafford's development, required Stafford to rebuild the asphalt road next to the development. *Id.* at 623. Stafford objected, rebuilt the road as Flower Mound required, and sued Flower Mound for compensation. *Id.* at 624. After a lengthy discussion of the United States Supreme Court's opinions in *Nollan* and *Dolan* and after rejecting Flower Mound's attempts to distinguish those cases, the *Stafford* Court agreed that Flower Mound advanced legitimate government interests—such as the safety and durability of the road—by requiring Stafford to rebuild the road. *Id.* at 643–44. However, the court also held that Flower Mound failed to show that the required rebuild of the road bore "any relationship to the impact of the Stafford Estates

20

development on the road itself or on the Town's roadway system as a whole."[8]  *Id.*

at 645.  The Court concluded,

> On this record, conditioning development on rebuilding Simmons Road with concrete and making other changes was simply a way for the Town to extract from Stafford a benefit to which the Town was not entitled.  The exaction the Town imposed was a taking for which Stafford is entitled to be compensated.

*Id.*  Relying on *Stafford*, Rembert argues that the trial court erred by granting

Appellants' plea to the jurisdiction as to its inverse condemnation claim.

Appellants argue that *Stafford* is distinguishable because it "involved an off-site road improvement obligation, not an internal subdivision road."  But Appellants omit that Flower Mound required Rembert to not only build Auburn Road to connect F.M. 1171 and Peters Colony Road but also to acquire the land necessary to do so in the manner that Flower Mound required instead of permitting Rembert to build two points of egress on the land it already owned and that abutted those two roads. In other words, Flower Mound's requirement that Rembert acquire additional land and construct Auburn Drive is not "the garden-variety on-site requirement" that Appellants contend it to be.

In a further attempt to distinguish *Stafford*, Appellants argue that the evidence that the development's use of Auburn Drive will not exceed five percent of its capacity is not evidence of how much traffic from the development will use Auburn Drive now or in the future.  Appellants posit that the development could

---

[8]Stafford had offered evidence that its development would increase traffic on the road by only about eighteen percent.  *Id.* at 644.

21

hypothetically account for seventy-five percent of the traffic on Auburn Drive but still account for less than five percent of Auburn Drive's capacity. But Appellants ignore other evidence in the record that, combined with the five percent capacity evidence, presents an issue for the factfinder. For example, there is evidence that Auburn Drive was a fee-impact eligible road and that Flower Mound "anticipated that the construction of Auburn Drive would likely be necessary within the upcoming 10-year window as a roadway improvement." While this certainly did not guarantee that Flower Mound would in fact build Auburn Drive, this evidence, combined with the evidence that the development would use only five percent or less of Auburn Drive's capacity, presents a fact question on the proportionality prong of Rembert's takings claim.[9] *See id.* In other words, the factfinder must determine whether Flower Mound took advantage of Rembert's request to develop the property and exacted a benefit to which it was not entitled by requiring that Rembert construct Auburn Drive.

Appellants also argue that the trial court properly dismissed Rembert's takings claim because Rembert consented to the alleged taking. A landowner may consent to property being taken or damaged without payment of any compensation. Tex. Const. art. I, § 17; *Hale v. Lavaca Cnty. Flood Control Dist.*, 344 S.W.2d 245, 248 (Tex. Civ. App.—Houston 1961, no writ). Consent is an act of the will; it need

---

[9]The parties do not dispute that the construction of Auburn Drive served legitimate government interests, the first prong of the takings analysis. *See id.* at 634.

not be written but may be spoken, acted, or implied. *Hightower v. City of Tyler*, 134 S.W.2d 404, 407 (Tex. Civ. App.—El Paso 1939, writ ref'd).

To support their consent argument, Appellants quote language in the Agreement that purports to waive any takings claims, points to e-mails it contends show that Rembert understood all along that his total reimbursement would not exceed fifty percent of the cost of constructing Auburn Drive, and argues that Rembert never objected to the condition that it construct Auburn Drive. The e-mails, however, all post date the first development agreement, and nothing in the e-mails confirms Rembert's supposed understanding or consent to Appellants' contention that total reimbursement could not exceed fifty percent of the construction cost. To the contrary, each e-mail to or from Rembert can be construed to speak separately about impact fee credits—which are capped at fifty percent of total cost—and reimbursement—which may or may not be capped at fifty percent of total cost.[10] Moreover, Rembert contends that it did not consent to any taking and that it never understood or read the Agreement to waive or otherwise preclude its ability to recover up to 100% of the construction cost. And Rembert presented evidence to support these contentions. Specifically, Reginald Rembert's affidavit in opposition to the plea to the jurisdiction states that "Rembert's intent and understanding at the time the Agreement was signed was that [Flower Mound] would pay Rembert the difference between the Auburn Drive construction cost

---

[10]Some of the e-mails do support Appellants' contention that all reimbursement to Rembert could not exceed fifty percent of the construction cost, but Rembert was not a sender or recipient of those e-mails.

minus the total amount of roadway impact fees in the Subdivision." The affidavit also explains Rembert's interpretation of Flower Mound's reimbursement obligation under the Agreement and states that "[b]ecause Rembert was to be reimbursed for 100% of its costs to construct Auburn Drive pursuant to the express terms of the Agreement, there were no constitutional or inverse condemnation claims for Rembert to waive at that time." And based on this evidence, there is a question of fact as to whether Rembert consented to the alleged taking. *See generally Miranda*, 133 S.W.3d at 227 (stating trial court cannot grant plea to jurisdiction if there is a fact question concerning the jurisdictional issue). *Compare Stafford*, 135 S.W.3d at 624 (stating developer objected "at every administrative level"), *with Rischon Dev. Corp. v. City of Keller*, 242 S.W.3d 161, 168–69 (Tex. App.—Fort Worth 2007, pet. denied) (affirming judgment that developer consented to conditions imposed by not objecting before signing development agreement).[11]

Finally, Appellants contend that Flower Mound did not have the requisite intent required to support a takings claim because a breach of contract cannot result in a taking. We disagree for two reasons. First, Rembert clearly pleaded its inverse condemnation claim in the alternative to its breach of contract claim. *See* Tex. R. Civ. P. 48 (permitting parties to plead alternative, inconsistent claims for relief). Should the trial court determine that the Agreement and Flower Mound's

---

[11]Also, we note that neither *Stafford* nor *Rischon* was decided after a pretrial plea to the jurisdiction and that Appellants resisted responding to discovery in this case before the trial court ruled on its plea to the jurisdiction. *See Stafford*, 135 S.W.3d at 624; *Rischon*, 242 S.W.3d at 166.

ordinances required Flower Mound to reimburse Rembert only fifty percent of the Auburn Drive construction cost, Rembert's inverse condemnation claim would not rely on the Agreement as a basis of liability. *See generally Sefzik*, 198 S.W.3d at 896 (affirming denial of summary judgment on takings claim based on condition city placed on development approval because claim not based on contract). In other words, Rembert's takings claim, because it is pleaded in the alternative to its breach of contract claim, is not dependent upon Flower Mound's alleged breach of contract.

Second, the cases upon which Appellants rely are distinguishable. For example, the claimants in *Kirby Lake* contractually agreed that the Water Authority could use the facilities for free until the Water Authority purchased the facilities and thus could not claim that the Water Authority's use of the facilities constituted a taking. *See* 320 S.W.3d at 844. In *Gen. Servs. Commiss'n v. Little-Tex Insulation Co.,* 39 S.W.3d 591, 593–94, 598–99 (Tex. 2001), the claimant constructed a recreational facility for Texas A&M University and contended that by not paying additional amounts under the contract, the school had taken the claimant's "labor and materials to build an athletic facility for use as part of its public university." Finally, in *NuRock*, NuRock settled a federal lawsuit against the City of Corinth and agreed as part of the settlement to make improvements to a specified road. *See* 293 S.W.3d at 367. The claimants in each case attempted inverse condemnation claims based only on contractual obligations.

Here, there is evidence, some of it conflicting, that the construction of Auburn Drive may or may not have been required by Flower Mound's ordinances, that Flower Mound conditioned approval of Rembert's development on Rembert's construction of Auburn Drive, that only then did the parties enter into a development agreement, and that Rembert never consented to building Auburn Drive without receiving full reimbursement. Should Appellants prevail on their contention that the Agreement and Flower Mound's ordinances limit Rembert's reimbursement to fifty percent, Rembert should be permitted to proceed on its alternative claim that Flower Mound's ordinances and resulting development condition constituted a compensable taking. *See generally Stafford*, 135 S.W.3d at 645. Of course, if Rembert is found after a trial on the merits to have consented to receiving only fifty percent reimbursement (or if another defense to Rembert's alternative claim for a compensable taking bars Rembert's recovery), Rembert could not prevail on its takings claim. Thus, our holding should not be construed (as Appellants contend in their motion for rehearing) to mean that a party may consent via contract to a defined reimbursement and also seek the remainder of the cost through a takings claim.

On this record, given the conflicting evidence and the alternative nature of Rembert's inverse condemnation claim, we hold that the trial court erred by granting Appellants' plea to the jurisdiction as to Rembert's alternatively pleaded inverse condemnation claim. *See* Tex. R. Civ. P. 48; *see also Stafford*, 135 S.W.3d at 645; *Miranda*, 133 S.W.3d at 227. We sustain Rembert's sole cross-issue.

## VIII. Conclusion

Having overruled Appellants' second and third issues and part of their fourth issue, we affirm in part the trial court's denial of Appellants' plea to the jurisdiction. Having sustained Rembert's sole cross-issue, we reverse the part of the trial court's order that granted Appellants' plea to the jurisdiction as to Rembert's inverse condemnation claim. Finally, having sustained Appellants' first and fifth issues and part of their fourth issue, we reverse in part the trial court's order denying Appellants' plea to the jurisdiction and dismiss for lack of subject-matter jurisdiction Rembert's request for judicial declarations and request for attorney's fees based on that claim. We remand the case to the trial court for further proceedings consistent with this opinion.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: March 1, 2012

27