COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS



| | § | |
|---|---|---|
| JNC LAND COMPANY, INC., | § | No. 08-13-00165-CV |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 205th District Court |
| | § | |
| THE CITY OF EL PASO, TEXAS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC # 2010-4955) |
| | § | |

# **O P I N I O N**

JNC Land Company, Inc. appeals from an order granting the City of El Paso's plea to the jurisdiction. For the reasons that follow, we reverse and remand.

## **FACTUAL SUMMARY**

JNC Land Company owns approximately 121.20 acres of land in El Paso County. Prior to 1999, the property was outside of the city limits of El Paso. On December 9, 1999, the City and JNC entered into an agreement to annex the property to El Paso (the Annexation Agreement). Under the Annexation Agreement, JNC agreed to develop the property in accordance with the rules and regulations of the City of El Paso. The Annexation Agreement required JNC to apply for and secure approval of a subdivision in accordance with the procedures of the El Paso Municipal Code prior to issuing any building permits or certificates of occupancy. Further, JNC agreed to dedicate and improve as part of any subdivision applications

covering the property the necessary right-of-way for extensions of any arterial streets shown within the City's official "Major Thoroughfare Plan."

JNC's petition alleges that it subsequently improved the property and made street improvements on arterial streets. This included the construction of two streets designated on the City's official Major Thoroughfare Plan in excess of the width determined by the Traffic Impact Study. JNC incurred costs of more than $300,000 to construct these two streets and it sought reimbursement for the excess-width paving, but the City refused to pay.

JNC filed suit against the City for breach of contract.[1] The City filed a plea to the jurisdiction asserting its immunity had not been waived. The trial court granted the plea and dismissed the suit.

## PLEA TO THE JURISDICTION

In Issue One, JNC challenges the trial court's order granting the plea and dismissing its breach of contract claim. The City alleged in its plea to the jurisdiction that the Annexation Agreement is not a contract for which immunity is waived by Section 271.152 of the Local Government Code. *See* TEX.LOCAL GOV'T CODE ANN. § 271.152 (West 2005). The City directed its plea to the jurisdiction at both the pleadings and certain jurisdictional facts. *See Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004) (observing that a defendant may direct a plea to the jurisdiction at the plaintiff's pleadings, the existence of jurisdictional facts, or both).

### *Standard of Review*

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action. *Harris County v. Sykes*, 136 S.W.3d 635,

---

[1] The petition also sought a declaratory judgment and raised other claims but JNC has restricted its appeal to the breach of contract claim.

638 (Tex. 2004); *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The burden is on the plaintiff to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *City of El Paso v. Mazie's, L.P.*, 408 S.W.3d 13, 18 (Tex.App.--El Paso 2012, pet. denied). Whether a party has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law which is subject to *de novo* review. *Miranda*, 133 S.W.3d at 226; *Mazie's*, 408 S.W.3d at 18. Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law subject to *de novo* review. *Miranda*, 133 S.W.3d at 226.

When a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the case. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its pleading. *Miranda*, 133 S.W.3d at 226-27.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the appellate court considers relevant evidence on that issue even where those facts may implicate the merits of the cause of action. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *Miranda*, 133 S.W.3d at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228. Under this standard, when reviewing a plea in which the pleading requirement has been met, we credit as true all evidence favoring the non-movant and draw all

reasonable inferences and resolve any doubts in the non-movant's favor. *Id.* The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* If the movant discharges this burden, the non-movant must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder. *Id.* at 227-28. The trial court rules on the plea to the jurisdiction as a matter of law if the relevant jurisdictional evidence is undisputed or it fails to raise a fact question on the jurisdictional issue. *Id.* at 228.

*Governmental Immunity*

Sovereign immunity protects the State from lawsuits for money damages. *Reata Construction Corporation v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Texas Natural Resource Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). It also deprives a trial court of subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 224. Political subdivisions of the state, including cities, are entitled to such immunity--referred to as governmental immunity--unless it has been waived. *Reata*, 197 S.W.3d at 374; *City of El Paso v. High Ridge Construction, Inc.*, 442 S.W.3d 660 (Tex.App.--El Paso 2014, pet. filed).

*Waiver of Immunity -- Section 271.152*

The Texas Legislature enacted Section 271.152 to waive local governmental entities' immunity from suit for certain breach of contract claims. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). The statute provides that:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX.LOCAL GOV'T CODE ANN. § 271.152. The Supreme Court has held that Section 271.152, when applicable, waives a governmental entity's immunity from suit for breach of written contract by clear and unambiguous language. *Williams*, 353 S.W.3d at 134. Three elements must be established in order for Section 271.152's waiver of immunity to apply: (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by Section 271.151(3); (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is "subject to this subchapter" as defined by Section 271.151 and 271.152 of the Local Government Code. *Williams*, 353 S.W.3d at 134-35; *see El Paso Education Initiative, Inc. v. Amex Properties, LLC,* 385 S.W.3d 701, 706 (Tex.App.--El Paso 2012, pet. denied). In its plea, the City restricted its jurisdictional challenge to the third element of Section 271.152 and we shall do likewise.[2]

For a contract to be subject to Section 271.152's waiver of immunity: (1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity. *Willliams*, 353 S.W.3d at 135. It is undisputed that the Annexation Agreement is in writing and was executed on behalf of the City. JNC's arguments and the City's responses implicate the second, third, and fourth elements.

---

[2] The City of El Paso is an incorporated home-rule city. EL PASO CITY CHARTER § 1.1; *see Moreno v. City of El Paso*, 71 S.W.3d 898, 901 (Tex.App.--El Paso 2002, pet. denied)(stating that the City of El Paso is a home rule city existing under Article XI, Section 5 of the Texas Constitution). A home-rule city is a type of municipality. *Williams*, 353 S.W.3d at 135. The Local Government Code's definition of "local governmental entity" includes a municipality. TEX.LOC.GOV'T CODE ANN. § 271.151(3)(A)(West Supp. 2014). It is also undisputed that the City is authorized to enter into contracts. *See* EL PASO CITY CHARTER § 1.1 ("The City of El Paso shall continue as a body politic, exercising all powers of local self-government which are or come to be conferred upon constitutional home rule cities in the State of Texas."); *Williams*, 353 S.W.3d at 135; *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998)(observing that home-rule cities possess all powers of the state not inconsistent with the Constitution, the general laws, or the city's charter).

*Written Contract to Provide Goods or Services to the City*

The City claimed in its plea that the Annexation Agreement is not a contract for which immunity is waived by Section 271.152 because it is not an agreement to provide goods or services to the City. The Supreme Court recently stated that: "Any written, authorized contract that states the essential terms of an agreement for providing services to the governmental entity triggers the waiver of immunity under chapter 271." *Lubbock County Water Control and Improvement District v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 302 (Tex. 2014). The agreement to provide goods or services to the governmental entity "need not be the primary purpose of the agreement." *Id.* at 302, *quoting Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*, 320 S.W.3d 829, 839 (Tex. 2010).

JNC maintains that the agreement at issue here is the Annexation Agreement and certain municipal ordinances. The Texas Supreme Court has recognized that ordinances and related documents may be read together as a single agreement and "a court may determine, as a matter of law, that multiple documents comprise a written contract." *Williams*, 353 S.W.3d at 137, *quoting Fort Worth Independent School District v. City of Fort Worth*, 22 S.W.3d 831, 840-41 (Tex. 2000). JNC's breach of contract claim alleges that the City breached the Annexation Agreement by failing to reimburse JNC for excess-width paving of two arterial streets. Under the Annexation Agreement, JNC agreed to develop the property "in accordance with the rules and regulations of the City." Under Paragraph Ten of the Annexation Agreement, JNC agreed to dedicate and improve as part of any subdivision application the necessary right-of-way for extensions of any arterial streets shown within the City's official Major Thoroughfare Plan.

Section 19.28.010(A) of the El Paso Municipal Code requires the subdivider, upon recording of the approved subdivision, to proceed with construction of the required

improvements. EL PASO MUNIC. CODE § 19.28.010(A). Required improvements include streets and other rights-of-way. *Id*. § 19.28.050(C). The Municipal Code requires the subdivider to make street improvements at its sole cost, except when excess-width paving is required. EL PASO MUNIC. CODE § 19.28.040(A)(1). Excess-width paving is defined by the Municipal Code as paving not attributable to the development of the subdivision, based on a Traffic Impact Study, on an arterial street designated on a Major Thoroughfare Plan. EL PASO MUNIC. CODE § 19.28.040(A)(1). In such a case, Section 19.28.040(A)(2) specifies that "the cost attributable to the excess width of the arterial street improvement shall be borne by the city." *Id*. § 19.28.040(A)(2).

The City complains that JNC's breach of contract claim based on Section 19.28.040 is attempting to import an external term into the Annexation Agreement, but the Agreement requires JNC to develop the property in accordance with the City's rules and regulations and it expressly references Title 19 of the Municipal Code. Section 19.28.040 is directly related to the provisions with which JNC was required to comply. We conclude that the agreement between the parties consists of the Annexation Agreement and the pertinent municipal ordinances, including Section 19.28.040.

The remaining question is whether the Annexation Agreement is a contract for providing goods or services to the City. Chapter 271 does not define the term "services" as it is used in Section 271.152 even though the Legislature has defined it in other contexts. *Kirby Lake*, 320 S.W.3d at 839; *High Ridge Construction*, 442 S.W.3d at 668. Absent a definition, the term is sufficiently broad to encompass a wide array of activities. *Id.*, *citing Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962)(stating that the term "services" has a rather broad and general meaning and it includes generally any act performed for the benefit of another under

some arrangement or agreement whereby such act was to have been performed."). For the contract to come within the reach of Section 271.152, the benefit that the local governmental entity would receive must be direct and unattenuated. *High Ridge Construction*, 442 S.W.3d at 669; *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex.App.--Waco 2009, pet. denied).

The City cites *Lubbock County Water Control and Improvement District v. Church & Akin* in support of its position that any benefit to the City from the Annexation Agreement is indirect and attenuated. The Lubbock County Water Control & Improvement District (WCID) operates Buffalo Springs Lake and patrons are required to pay for access to the lake through a controlled gate. *Lubbock County Water Control and Improvement District*, 442 S.W.3d at 299. WCID operated a marina on the lake for many years, but in 2007 it ceased operations leased the premises to Church & Akin. *Id.* Under the lease, the parties agreed that the premises would be used only as a marina, restaurant, and for the sale of gasoline and sundry items as a recreational facility unless WCID consented to some other use. *Id.* At the end of the initial lease term, Church & Akin exercised its option to extend the lease and WCID accepted payment, but it terminated the lease six months later. *Id.* Church & Akin filed suit alleging breach of contract and WCID filed a plea to the jurisdiction. *Id.* The trial court denied the plea and WCID appealed. *Id.* The Seventh Court of Appeals affirmed because it concluded that WCID's immunity from suit for breach of contract was waived under Chapter 271. *Id.* Church & Akin argued that the lease included agreements to provide services to the WCID because Church & Akin agreed to operate the marina, issue and redeem catering tickets, and return a percentage of its profits from sundry sales. *Id.* at 302. The Supreme Court concluded that the lease prohibited Church & Akin from using the premises for any purpose other than a marina but it did not require Church & Akin to operate the premises as a marina. *Id.* at 303. Because WCID did not

have a right under the lease to receive services, the Supreme Court determined that the mere fact that the WCID may have received services as a result of the lease is insufficient to invoke Chapter 271's waiver of immunity. *Id.* The Supreme Court concluded that any services received by WCID under the lease were indirect and attenuated. *Id.*

The City is correct that JNC's development of the property was voluntary and it could not demand that JNC develop the subdivision, but once JNC proceeded with that development, the City had a right under the Annexation Agreement and the pertinent municipal ordinances to compel JNC to develop the property in accordance with the rules and regulations of the City. Consequently, the instant case is distinguishable from *Church & Akin*. The Annexation Agreement and the pertinent municipal ordinances required JNC to (1) improve certain right-of-way extensions and dedicate them to the City; (2) dedicate and improve neighborhood and public community parkland; and (3) set aside real property for future acquisition by the City. These services provide a direct and unattenuated benefit to the City. *See Kirby Lake*, 320 S.W.3d at 832 (holding that development agreements requiring developers to build water and sewer facilities and lease the facilities to the water authority free of charge provided services directly to the water authority because the developers contracted to construct, develop, lease, and bear all risk of loss or damage to the facilities); *Town of Flower Mound v. Rembert Enterprises, Inc.*, 369 S.W.3d 465, 472-74 (Tex.App.--Fort Worth 2012, pet. denied) (holding that a development agreement with town requiring developer to construct a road was a contract to provide services to the town). Issue One is sustained.

## RIPENESS DOCTRINE

In Issue Two, JNC contends that the trial court erred by sustaining the City's plea to the jurisdiction based on its argument that the breach of contract claim is not ripe because JNC failed to present its claim to the City Council as required by the City Charter.

*Standard of Review*

Ripeness is an element of subject matter jurisdiction, and is a legal question subject to *de novo* review. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). In evaluating ripeness, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Robinson*, 353 S.W.3d at 755; *Waco Independent School District v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000); *Patterson v. Planned Parenthood of Houston & Southeast Texas, Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). The ripeness analysis focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Robinson*, 353 S.W.3d at 755. A case is not ripe when determining whether a plaintiff has a concrete injury depends on contingent or hypothetical facts. *Waco Independent School District*, 22 S.W.3d at 852. The ripeness doctrine serves to avoid premature adjudication. *Patterson*, 971 S.W.2d at 442.

*Section 1.5 of the Charter*

Section 1.5 of the City of El Paso Charter provides: "No suit shall be instituted against the City unless the claimant shall aver and prove that, previous to filing the original petition, the claim was presented to the Council and the Council failed either to grant or act upon the claim in a timely fashion." EL PASO CITY CHARTER § 1.5. On June 2, 2009, JNC sent a detailed two-page demand letter addressed to Joyce Wilson, the El Paso City Manager, which began with the sentence: "Pursuant to Section 1.5 of the City of El Paso Charter, Application for Remedy

Prerequisite to Suit Against City, the following claim is presented." The letter explained the history of the dispute regarding JNC's claim for reimbursement for overwidth paving. The letter described how JNC had refrained from filing suit because city employees had represented to JNC for three years that its claim for overwidth paving would be paid and it had been told to submit its claim for reimbursement. JNC expressed its surprise that it had recently been told that the City had changed its position and the claim would not be paid. JNC requested that Wilson review the matter and recommend to the City Council a settlement in the amount of overwidth paving to which it was entitled. A file-stamp on the letter reflects it was received in the Mayor's Office on June 4, 2009. Two weeks later, an Assistant City Attorney sent a letter to counsel for JNC stating that the Office of the City Attorney was in receipt of counsel's letter dated June 2, 2009 and advising her that the letter failed to comply with the notice requirements of the El Paso City Charter.

The City asserts that JNC's suit is not ripe because JNC addressed its demand to the "wrong recipient" and it should have presented its claim to the City Council as required by Section 1.5. Even though JNC's letter is addressed to the City Manager, the face of the letter reflects that it was received in the Mayor's Office on June 4, 2009. The Mayor is a member of the City Council. EL PASO CITY CHARTER § 4.1(B). We conclude that JNC established it presented its claim to the City Council as required by Section 1.5. Issue Two is sustained.

### ARGUMENTS RELATED TO THE MERITS

In its final issue, JNC argues that the trial court erred by granting the plea to the jurisdiction based on the arguments raised in the supplemental pleas to the jurisdiction which relate to the merits of the dispute between the parties. The City disputes that any of its arguments pertain to the merits of the breach of contract claim but it adds there is no evidence

the trial court based its decision on any such argument. The City presented multiple arguments to the trial court in its plea and supplemental pleas to the jurisdiction and the trial court did not state the basis of its ruling in the order sustaining the plea to the jurisdiction. Thus, JNC is obligated to challenge any arguments raised by the City which could properly support the trial court's order. We understand JNC's final issue as seeking to show that there is no other basis on which the trial court's order could properly be sustained.

The purpose of a plea to the jurisdiction is to defeat a cause of action without regard to whether the asserted claim has merit. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In deciding a plea to the jurisdiction, a court may not weigh the merits of the claim. *Id.* The City argued in its plea that JNC's contract claim is not valid because JNC was merely performing a pre-existing duty and its promise to pay JNC Land for overwidth paving was not supported by consideration. These arguments are related exclusively to the merits of JNC's breach of contract claim and cannot support the trial court's order sustaining the City's plea and dismissing the suit for lack of jurisdiction.

The City also maintained that a provision of the Annexation Agreement prohibited JNC from suing it for monetary damages, and therefore, JNC's suit is "invalid on its face." This argument relates to a defense to JNC's suit but is immaterial to the question whether the City's immunity from suit is waived by Section 271.152 of the Local Government Code. Thus, this argument will not support the trial court's order dismissing the suit.

The City also included an argument in its third supplemental plea to the jurisdiction that JNC could not rely on statements made by City employees that JNC would be reimbursed for overwidth paving. Whether the City can be bound by the statements of its employees is an issue

which relates to the merits of the breach of contract claim. This argument does not support the trial court's order dismissing the suit.

The City next argued in its third supplemental plea to the jurisdiction that JNC "is attempting to recast a claim for promissory estoppel as a breach of contract claim that defeats The City's governmental immunity." The City's immunity is not waived for a promissory estoppel claim. Thus, this argument does not relate to the merits of JNC's breach of contract claim and is properly raised in a plea to the jurisdiction. An examination of JNC's pleadings shows that it has alleged a claim for breach of contract, not promissory estoppel, and we have held that the contract is one for which the City's immunity from suit is waived pursuant to Section 271.152 of the Local Government Code.

Finally, the City included an argument in its plea to the jurisdiction that it is not liable for attorney's fees on JNC's breach of contract cause of action. As noted by JNC, this argument pertains to a remedy potentially available to JNC and is not a basis on which the trial court could have sustained the plea to the jurisdiction. For all of these reasons, we sustain Issue Three. Having sustained each issue presented on appeal, we reverse the order dismissing JNC's suit for lack of jurisdiction and remand the cause to the trial court for trial.


June 26, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Parks, JJ.
Parks, J., sitting by assignment, not participating