# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

—————

## NO. 03-10-00085-CV

—————

**City of San Antonio, Acting By and Through the San Antonio Water System, Appellant**

**v.**

**Lower Colorado River Authority; Rebecca A. Klein; Michael G. McHenry; Linda C. Raun; Tom Martine; Steve K. Balas; Lori A. Berger; Ida A. Carter; John C. Dickerson, III; Vernon E. "Buddy" Schrader; W.F. "Woody" McCasland; Franklin Scott Spears, Jr.; Timothy T. Timmerman; Kathleen Hartnett White; and Richard "Dick" White, Appellees**

—————

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-09-002760, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

—————

## O P I N I O N

The City of San Antonio, acting by and through the San Antonio Water System ("SAWS"), sued the Lower Colorado River Authority ("LCRA") and its directors for breach of contract. SAWS and LCRA entered into a contract under which SAWS would finance a project to increase the usable water output from the Colorado River in exchange for the right to buy some of the output from LCRA. The parties spent several years planning the project under certain parameters before LCRA declared that some parameters had to change. SAWS filed suit, alleging that LCRA breached the parties' contract. LCRA filed a plea to the jurisdiction that argued it was immune from suit under Texas Local Government Code sections 271.152 and 271.153. *See* Tex. Loc. Gov't Code Ann. §§ 271.152, 271.153 (West 2005 & Supp. 2010). The trial court granted LCRA's plea to the

jurisdiction. For the reasons explained below, we reverse the trial court's judgment and remand the cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, the Texas Legislature created regional planning groups to address Texas's long-term water needs. *See* Act of June 19, 1997, 75th Leg., R.S., ch. 1010, § 1.02, 1997 Tex. Sess. Law Serv. 3611, 3611-16 (West 1997) (codified at Tex. Water Code Ann. § 16.053 (West 2008)). The planning group for Region K, which includes the lower Colorado River area, realized that it faced a shortage of water for agricultural use. The planning group for Region L, which includes San Antonio, realized that it faced a shortage of water for municipal use. The two planning groups agreed to try to pool resources to meet their respective needs.

Under the plan they devised, the City of San Antonio would finance capital improvements for a project that would increase the Colorado River's usable water output by 330,000 acre-feet.[1] In exchange, San Antonio would have the right to purchase up to 150,000 acre-feet of water for its municipal water needs. The remaining water would stay in the lower Colorado River area for agricultural use. The Texas Legislature authorized SAWS and LCRA to enter into a contract implementing this plan, *see* Tex. Spec. Dists. Local Laws Code Ann. § 8503.030 (West 2009), provided that the contract would "protect and benefit the lower Colorado River watershed and [LCRA's] water service area, including municipal, industrial, agricultural,

---

[1] An acre-foot of water is equivalent to about 325,851 gallons. *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 398 n.36 (Tex. 2009).

recreational, and environmental interests." *Id*. § 8503.030(n)(1). LCRA and SAWS signed a "definitive" contract on March 1, 2002.

The contract divided the project into two phases. The first phase was a "Study Period" during which "the Parties [would] determine if up to 330,000 acre-feet per annum of water [could] be made available from sources within the Lower Colorado River Basin." During the Study Period, the parties would conduct various analyses of the project's proposed components. The second phase of the project would be an "Implementation Period" of up to eighty years, during which time SAWS would have the right to purchase up to 150,000 acre-feet of water annually from LCRA depending on how much water the project generated.

The parties' contract provided that SAWS would pay for all studies conducted during the Study Period and LCRA would have exclusive ownership of the studies. SAWS ultimately spent over forty-three million dollars during the Study Period, including thirty-five million on studies and four million on non-refundable "option fees."

The contract provided that if either party defaulted by failing to fulfill a contractual obligation, the other party would be "entitled to any remedy available . . . at law and/or in equity." The contract also provided that a default would not automatically terminate the contract. Rather, SAWS could terminate the contract "in its sole discretion, with or without cause," at any point during the Study Period, whereas LCRA could terminate during the Study Period only if it concluded that the capital cost of the project should be increased and SAWS refused.

By the middle of 2008, studies had established that under its original parameters, the project would generate between 90,000 and 115,000 acre-feet of water for SAWS. In December of

3

2008, however, LCRA declared that certain parameters of the project had to change.[2]  For example, LCRA determined that Region K would need significantly more water than originally projected.  LCRA concluded that under the new parameters, the project would not be able to provide any water to SAWS.

SAWS filed suit in district court, alleging that LCRA breached the parties' contract by requiring changes to the project's parameters.  SAWS sought over one billion dollars in damages, which it alleged was the difference between the cost of obtaining water under the contract and the cost of obtaining water from a different source.  Alternatively, SAWS sought approximately fifty million dollars in "restitution damages" for the amount LCRA was allegedly unjustly enriched during the Study Period by, among other things, getting to retain the studies SAWS had financed.

LCRA filed a plea to the jurisdiction in which it argued that it was immune from suit under Texas Local Government Code sections 271.152 and 271.153.  *See* Tex. Loc. Gov't Code §§ 271.152, 271.153.  The trial court granted LCRA's plea.  SAWS appeals.

## STANDARD OF REVIEW

Governmental immunity has two components:  immunity from liability and immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). A governmental entity that enters into a contract waives its immunity from liability but retains its immunity from suit unless its immunity from suit is specifically waived by the legislature. *Id*.  Governmental immunity from suit deprives the trial court of subject-matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*,

---

[2]  SAWS contends that this declaration was motivated by improper political and financial considerations.

4

133 S.W.3d 217, 224 (Tex. 2004). A plea to the jurisdiction is a proper instrument to raise the issue of governmental immunity. *Id*. at 226. Whether a court has subject-matter jurisdiction is a question of law, and we review the trial court's grant of a plea to the jurisdiction de novo. *Id*. When reviewing a grant or denial of a plea to the jurisdiction, we consider the plaintiff's pleadings, construed in favor of the plaintiff, and any evidence relevant to jurisdiction without weighing the merits of the claim. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

## DISCUSSION

LCRA is a governmental agency of the State of Texas and a political subdivision of the State. *See* Tex. Spec. Dists. Local Laws Code Ann. § 8503.001(a) (West 2009). Thus, it is immune from suit unless its immunity is waived. *Tooke*, 197 S.W.3d at 332. SAWS argues that LCRA's immunity was waived four ways: by statute, by agreement, by conduct, and by the Texas Constitution. We will consider only waiver by statute, as it is sufficient to dictate the outcome of this appeal.

The parties agree that if any statute serves to waive LCRA's immunity from suit, it is Texas Local Government Code section 271.152 ("section 271.152"). Section 271.152, titled "Waiver of Immunity to Suit for Certain Claims," provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.[3]

---

[3] The subchapter in question is subchapter I of chapter 271 of the local government code (sections 271.151-.160).

5

Tex. Loc. Gov't Code § 271.152. SAWS argues that all elements of this statute are met here, so LCRA's immunity from suit is waived. LCRA argues that the contract at issue is not "subject to this subchapter."

A contract is "subject to this subchapter" if it is "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." Tex. Loc. Gov't Code Ann. § 271.151(2) (West 2005). LCRA first argues that the contract at issue does not meet this definition because it is not an agreement to provide goods or services *to* LCRA, but rather is an agreement for LCRA to provide goods or services to SAWS. We disagree. Among other things, the contract obligated SAWS to identify, pursue, and fund feasibility studies that subsequently became LCRA's exclusive property. This clearly qualifies as "providing goods [and] services to" LCRA. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010) (courts should liberally interpret section 271.152's phrase "providing goods or services to"); *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins.*, 212 S.W.3d 320, 327 (Tex. 2006) (same); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 751 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd) (same).

LCRA next argues that even if the parties' contract satisfies all the requirements for a waiver of immunity under section 271.152, local government code section 271.153 ("section 271.153") imposes additional requirements for a waiver of immunity that are not met here. Section 271.153 provides:

6

(a)  The total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:

(1)  the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2)  the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

(3)  reasonable and necessary attorney's fees that are equitable and just; and

(4)  interest as allowed by law.

(b) Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

(1)  consequential damages, except as expressly allowed under Subsection (a)(1);

(2)  exemplary damages; or

(3)  damages for unabsorbed home office overhead.

Tex. Loc. Gov't Code § 271.153.  LCRA asserts that SAWS is not seeking a "balance due and owed" as permitted by subsection (a)(1), but rather is seeking "consequential damages" as prohibited by subsection (b)(1).  LCRA argues that this means its immunity from suit is not waived.

LCRA's argument relies on *Tooke v. City of Mexia*, in which the supreme court appeared to hold that the City of Mexia had not waived its immunity from suit on a contract because the plaintiff sought damages precluded by section 271.153.  *See* 197 S.W.3d at 346 ("[T]he Tookes do not claim damages within [the] limitations [established by section 271.153].  Their only claim

7

is for . . . consequential damages excluded from recovery under the statute. Consequently, we conclude that the City's immunity from suit . . . has not been waived."). *Tooke* does not directly address the relationship between sections 271.152 and 271.153, but taken at face value, it seems to suggest that even if the elements of section 271.152 are satisfied, the State's immunity from suit is not waived if the plaintiff seeks damages precluded by section 271.153. *See id.* at 329 (even though section 271.152 waiver "would . . . reach the claim in this case," "recovery is barred" because "the consequential damages awarded the plaintiffs are not allowed by the statute"). Citing *Tooke*, LCRA argues that the trial court properly granted its plea to the jurisdiction because SAWS seeks damages precluded by section 271.153.

Recently, however, the supreme court has suggested that section 271.153 is not a proper basis for granting a dispositive pre-trial plea to the jurisdiction like the one at issue here. In *Kirby Lake*, 320 S.W.3d 829, a State agency claimed (as LCRA does) that its immunity from suit was not waived because there was no "balance due and owed" the plaintiff under the contract at issue. *See Kirby Lake*, 320 S.W.3d at 840. The supreme court rejected this argument, stating: "The purpose of section 271.153 is to limit the amount due by a governmental agency on a contract *once liability has been established*, not to foreclose the determination of whether liability exists." *Id.* (emphasis added). Here, section 271.153 would obviously "foreclose the determination of whether liability exists" if it served as the basis for granting LCRA's plea to the jurisdiction.

In keeping with *Kirby Lake*, several courts of appeals have held that section 271.153 is not a proper basis for granting a plea to the jurisdiction. *See, e.g.*, *City of N. Richland Hills v. Home Town Urban Partners, Ltd.*, Nos. 02-10-00224-CV & 02-10-00236-CV, 2011 Tex.

App. LEXIS 3249, at *17-18 (Tex. App.—Fort Worth Apr. 28, 2011, no pet. h.) (op. on reh'g); *Clear Lake City Water Auth. v. MCR Corp.*, No. 01-08-00955-CV, 2010 Tex. App. LEXIS 2194, at *29-31 (Tex. App.—Houston [1st Dist.] Mar. 11, 2010, pet. denied) (mem. op.) (whether balance is due under section 271.153 goes to merits of case, not to trial court's jurisdiction; at pre-trial stage, plaintiff satisfies section 271.153 by alleging facts to support claim that balance is due and owing under contract); *City of Houston v. Southern Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (same); *see also Jones v. City of Dallas*, 310 S.W.3d 523, 527-28 (Tex. App.—Dallas 2009, pet. denied) (on plea to the jurisdiction involving sections 271.152 and 271.153, courts should "not delve into the nature and extent of damages," which means section 271.153 is not basis for granting State's plea to the jurisdiction); *Dallas Area Rapid Transit v. Monroe Shop Partners, Ltd.*, 293 S.W.3d 839, 842 (Tex. App.—Dallas 2009, pet. denied) (acknowledging *Tooke* but stating that "statutory limitations on a plaintiff's recoverable damages do not deprive the trial court of subject matter jurisdiction to adjudicate the plaintiff's breach of contract claims"); *City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 448 (Tex. App.—Dallas 2008, pet. denied) (same). We find their logic compelling for several reasons.

First, whether a governmental entity can be liable for damages in a particular suit is a completely separate question from whether the entity can be subjected to the suit in the first place. That is to say, immunity from suit and immunity from liability are distinct concepts. *See Tooke*, 197 S.W.3d at 332. Immunity from suit bars suit against a governmental entity altogether and deprives a court of jurisdiction, whereas immunity from liability bars enforcement of a judgment but does not affect a court's jurisdiction. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696

(Tex. 2003). LCRA essentially argues that section 271.152 waives its immunity from suit only to the extent that section 271.153 permits liability. Some statutes do evince a clear legislative intent to tie immunity from suit to immunity from liability in this way. *See, e.g.*, Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a) (West 2011) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."); Private Real Property Rights Preservation Act, Tex. Gov't Code Ann. § 2007.004(a) (West 2008) ("Sovereign immunity to suit and liability is waived and abolished to the extent of liability created by this chapter."). But the statutes at issue here do not. Rather, the titles of sections 271.152 ("Waiver of Immunity to Suit For Certain Claims") and 271.153 ("Limitations on Adjudication Awards") make clear that the Legislature intended the former to govern immunity from suit and the latter to govern liability. *See* Tex. Gov't Code Ann. § 311.023(7) (West 2005) (court may consider statutes' titles in construing statutes). Indeed, no part of section 271.153 even mentions waiver of immunity from suit; the statute discusses nothing but limitations on liability. *See* Tex. Loc. Gov't Code § 271.153. Therefore, we cannot conclude that the Legislature intended section 271.153 to bear on immunity from suit.

Further, as a matter of logic, discussing limitations on liability makes sense only if liability can be imposed in the first place. Liability can be imposed on a governmental entity only if the entity's immunity from suit has been waived. *See Tooke*, 197 S.W.3d at 332 (if governmental entity's immunity from suit not waived, suit against entity barred altogether). Thus, discussing limitations on liability (as section 271.153 does) implies that the State's immunity from suit has already been waived. *See Baylor College of Med. v. Hernandez*, 208 S.W.3d 4, 10 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("A damages cap limits damages but does not

10

imply immunity from suit. To the contrary, damages caps . . . that 'insulate public resources from the reach of judgment creditors' indicate immunity from suit has been waived.") (quoting *Taylor*, 106 S.W.3d at 698). This fact suggests that courts should look first to section 271.152 to determine whether the State's immunity from suit is waived, and if it is, courts should then apply section 271.153 to determine the limitations of the State's liability. *See City of Mesquite*, 263 S.W.3d at 448 ("Once the trial court determines whether the contract falls within the provisions of section 271.152, it need not parse further the pleadings or the contract to determine whether the legislature has waived immunity for breach of contract claims."). *Kirby Lake* supports this two-step approach. *See Kirby Lake*, 320 S.W.3d at 840 ("The purpose of section 271.153 is to limit the amount due by a governmental agency on a contract *once liability has been established*.") (emphasis added).

Finally, local government code section 271.158 states that "Nothing in this subchapter shall constitute a grant of immunity to suit to a local governmental entity." Tex. Loc. Gov't Code Ann. § 271.158 (West 2005). This seems to preclude any interpretation of section 271.153 that would grant immunity in a case where section 271.152 would otherwise waive immunity.[4]

For all these reasons, we hold that section 271.153 was not a proper basis for granting LCRA's plea to the jurisdiction.

---

[4] No reported case has analyzed local government code section 271.158, and the statute's legislative history is unilluminating. *See* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005), available at http://www.capitol.state.tx.us/tlodocs/79R/analysis/html/HB02039H.htm (last visited June 20, 2011).

## CONCLUSION

The parties' contract satisfies the elements of local government code section 271.152. Under the statute's plain terms, this means that LCRA's immunity from suit is waived. Section 271.153 does not negate this waiver. The trial court therefore erred by granting LCRA's plea to the jurisdiction. We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Remanded

Filed: July 29, 2011