

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-14-00429-CV

**CITY OF SAN ANTONIO**,
Acting through City Public Service Board of San Antonio
a/k/a CPS Energy
Appellant

v.

**CASEY INDUSTRIAL, INC.**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-06252
Honorable Michael E. Mery, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice
Dissenting Opinion by:  Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Jason Pulliam, Justice

Delivered and Filed:  July 1, 2015

REVERSED AND DISMISSAL RENDERED, REMANDED

    Casey Industrial, Inc. sued CPS Energy[1] alleging various causes of action, including breach

of contract.  CPS Energy moved to dismiss Casey's suit on the grounds that its immunity from suit

was not waived.  The trial court denied the motion to dismiss, and this interlocutory appeal ensued.

---

[1] Appellant identifies itself as the City of San Antonio acting through the City of Public Service Board of San Antonio
(CPS Energy).

We reverse the trial court's order and render a dismissal of some of the claims asserted by Casey against CPS Energy in the underlying lawsuit. We remand for further proceedings.

## BACKGROUND

In August 2004, CPS Energy contracted with Casey and Wheelabrator Air Pollution Control, Inc., to add pollution control systems to one of CPS Energy's coal-fired power stations. After some disputes between the parties, Casey sued CPS Energy for, inter alia, breach of contract and quantum meruit. *City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio v. Casey Indus., Inc.*, 381 S.W.3d 589, 591 (Tex. App.—San Antonio 2012, pet. denied). Casey sought to recover additional costs it alleged it incurred as a result of Wheelabrator's failure to meet its obligations. *Id.* Casey moved for partial summary judgment on the ground that the three-party contract was void and its quantum meruit claim should be tried. *Id.* The trial court granted Casey's motion, *id.*, but, in a prior interlocutory appeal, a panel of this court reversed the judgment, *id.* at 596-97 ("the 2012 opinion"). We concluded the contract was not void, dismissed Casey's quantum meruit claim for want of jurisdiction, and remanded the cause to the trial court. *Id.*

After remand, CPS Energy filed a motion to dismiss Casey's breach of contract claim for lack of jurisdiction. CPS Energy asserted Casey's claims are outside the contract, its immunity from suit is not waived for an "extra-contractual" claim, and Casey's claims must be dismissed. The trial court denied the motion. In this appeal, in a single issue, CPS Energy asserts the trial court erred in denying its motion to dismiss Casey's extra-contractual claims.

## STANDARD OF REVIEW

Whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law, which we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether undisputed evidence of jurisdictional

facts establishes a trial court's jurisdiction is also a question of law. *Id.* In some cases, disputed evidence of jurisdictional facts also implicate the merits of the case and may require resolution by the finder of fact. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court is required to consider relevant evidence submitted by the parties. *Id.* at 227.

The procedure for a plea to the jurisdiction when evidence has been submitted to the trial court mirrors that of a traditional motion for summary judgment. *Id.* at 228; *see also* TEX. R. CIV. P. 166a(c). Thus, the burden is on the governmental entity, as the movant, to present evidence establishing the trial court lacks jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. Thereafter, the burden shifts to the plaintiff to demonstrate a disputed issue of material fact exists regarding the jurisdictional issue. *Id.* If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id.* at 227-28. On the other hand, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## DISCUSSION

In its motion to dismiss, CPS Energy argued the claims and additional compensation sought by Casey did not fall within the limited waiver of governmental immunity provided in Local Government Code sections 271.152 and 271.153. Therefore, CPS Energy asserted Casey's claims should be dismissed for lack of jurisdiction. In response, Casey argued (1) section 271.153 has no application because that section does not provide a basis for governmental immunity or jurisdiction, (2) if section 271.153 does provide such a basis, then Casey's claims fall within its scope, and (3) the trial court has jurisdiction to consider whether Casey's breach of contract claim for Wheelabrator-caused delays was a valid claim under the contract.

**A.        Waiver of Immunity to Suit for Certain Claims**

The Texas Local Government Code provides that "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005). Section 271.153 provides that, "[e]xcept as provided by subsection (c), the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:"

> (1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;
> (2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;
> (3) reasonable and necessary attorney's fees that are equitable and just; and
> (4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

TEX. LOC. GOV'T CODE ANN. § 271.153(a) (West Supp. 2015).

On appeal, Casey asserts our 2012 opinion is a clear indication that we considered whether Casey's breach of contract claim for Wheelabrator-caused delays was a valid claim under the contract "and [this court] concluded that Casey is entitled to maintain this claim." In our opinion, we concluded "section 14.1.2 [of the contract] does nothing more than what a similar provision in any construction contract allows: it allows the contractor to seek additional compensation for additional work when a 'change order' is properly submitted and approved by the owner." *Casey Indus.*, 381 S.W.3d at 595. CPS argues that, under our 2012 opinion, the trial court did not have jurisdiction unless Casey established there were signed change orders. For the reasons set forth below, we disagree with both parties' interpretations of our 2012 opinion.

Casey also argues that section 271.153 is not a proper basis for granting a dispositive pre-trial plea to the jurisdiction. Casey relies on *City of San Antonio ex rel. San Antonio Water System v. Lower Colorado River Authority*, 369 S.W.3d 231, 237-38 (Tex. App.—Austin 2011, no pet.), which concluded the Legislature did not intend section 271.153 to have any bearing on immunity from suit. However, the Texas Supreme Court in *Zachry Construction Corp. v. Port of Houston Authority of Harris County*, 449 S.W.3d 98, 110 n.54 (Tex. 2014), expressly disapproved of the holding in *Lower Colorado River Authority*. In *Zachry*, the Supreme Court considered whether "the Act's limitations on recovery [contained in section 271.153] help define and restrict the scope of waiver of immunity." *Id.* at 106. The Court first stated that "Section 271.152 must be read as follows: 'A local governmental entity . . . waives sovereign immunity to suit . . . subject to the terms and conditions' of the Act." *Id.* at 108. The Court then noted that "Section 271.153's limitations on recovery are incorporated into Section 271.152 by its last 'subject to' clause and are thereby conditions on the Act's waiver of immunity." *Id.* at 109. The Court disagreed with *Lower Colorado River Authority* "that this reading of the Act makes its waiver of immunity dependent on ultimate liability. The Act waives immunity for contract claims that meet certain conditions: the existence of a specific type of contract, a demand for certain kinds of damages, a state forum, etc. The waiver does not depend on the outcome, though it does require a showing of a substantial claim that meets the Act's conditions." *Id.* The Court also disagreed with *Lower Colorado River Authority* that this view of the Act makes Section 271.153 a grant of immunity, holding that "Section 271.153 does not add immunity that Section 271.152 takes away; Section 271.152 uses Section 271.153 to further define to what extent immunity has been waived." *Id.* at 109-10. The Court concluded that "the Act does not waive immunity from suit on a claim for damages not recoverable under Section 271.153." *Id.* at 110.

Therefore, under *Zachry*, we conclude that, in order for the trial court to have jurisdiction over a contract claim asserted against a governmental entity, the claimant must establish "the existence of a specific type of contract" under section 271.152 and "a demand for certain kinds of damages" as allowed under section 271.153. Accordingly, even if we assume a jurisdictional fact issue exists under section 271.152, we must analyze whether the damages sought by Casey are recoverable under section 271.153 in order for the trial court to have jurisdiction.

**B.      Limitations on Adjudication Awards**

As relevant here, section 271.153 limits the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract to: "(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration; [or] (2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract." TEX. LOC. GOV'T CODE ANN. § 271.153(a)(1), (2) (West Supp. 2015).

**1.  Subsection (a)(1): balance due and owed, including any amount owed as compensation for increased cost to perform work as a direct result of owner-caused delays or acceleration**

In its motion to dismiss, CPS Energy alleged there is no amount owed due to increased costs as a result of owner-caused delays.[2] CPS Energy contends any delays were caused by Wheelabrator alone. In its response to CPS Energy's motion to dismiss and on appeal, Casey

---

[2] CPS Energy also alleged that, other than contractually withheld retainage, there is no balance due and owed. Casey responds by insisting the retainage is an amount due and owed within the scope of section 271.153, and CPS Energy is also withholding a portion of the contract because of Casey's claim for Wheelabrator-caused damages. However, even if the withheld retainage is "due and owed," CPS Energy admits on appeal it is not seeking a dismissal of Casey's claim for retainage, and we remand for further proceedings on that claim.

points to no evidence that any amount is due and owed as compensation for increased work as a direct result of delays or acceleration caused by CPS Energy.[3] Nevertheless, Casey argues the damages it seeks as a result of CPS Energy's breach of contract is "due and owed." This argument is predicated on Casey's contention that it is owed money for costs it incurred under the contract as a result of Wheelabrator-caused delays. It appears Casey's argument is that Wheelabrator's delays caused it to incur additional costs to complete the project, and, because the contract required it to deliver a "completed project," these additional costs are due and owed delay damages,[4] which the *Zachry* Court held fell within the scope of section 271.153(a)(1).

In *Zachry*, the Port of Houston contended no balance could be due and owed under a contract unless the contract expressly calls for payment. 449 S.W.3d at 111. The Supreme Court disagreed, noting "[n]o such requirement can be found in the statute's text." *Id.* "The word 'due' simply means 'owing or payable' and 'owing' means 'unpaid'." *Id.* "A 'balance due and owed . . . under the contract' is simply the amount of damages for breach of contract payable and unpaid. Direct damages for breach—'the necessary and usual result of the defendant's wrongful act'—certainly qualify." *Id.* The Court concluded "the Local Government Contract Claims Act waives immunity for a contract claim for delay damages not expressly provided for in the contract." *Id.* at 114.

Here, all parties acknowledge the contract provides a mechanism by which Casey could seek additional compensation. Accordingly, any compensation owed to Casey for delays caused by Wheelabrator does not fall within the scope of subsection (a)(1) to section 271.153(a), but instead, falls—if at all—within the scope of subsection (a)(2) to section 271.153(a).

---

[3] During oral arguments, Casey agreed there was no indication of owner-caused delays.

[4] In its petition, Casey alleges that as a result of Wheelabrator's "default," "Casey was forced to expend significant additional resources to recover the project schedule."

## 2. Subsection (a)(2): the amount owed for change orders

Section 271.153(a)(2) allows compensation for amounts "owed for change orders." Both at the hearing on CPS Energy's motion to dismiss and during oral arguments before this court, Casey agreed there were no actual change orders for the extra work it alleges it performed as a result of Wheelabrator's delays. However, Casey alleges CPS Energy was on notice of the Wheelabrator-related problems, no resolution between Casey and CPS Energy was achieved for the purpose of issuing any change orders, and Casey is now entitled to seek compensation pursuant to Article 15 of the contract, which provides the procedures for claims and dispute resolution.

Casey first points to Article 14, section 14.1.2 as allowing it to seek a change order. That section provides, in pertinent part, as follows:

> Provided D/B Contractor is not in Default itself, a Default by Wheelabrator under Section 14.1.1, which results in an impairment or frustration of D/B Contractor's Work through no fault of D/B Contractor, shall be considered a "Force Majeure" event and will entitled D/B Contractor to request an extension of time and/or additional compensation by Notice to Owner as required in Section 9.1.3.

We will assume Wheelabrator defaulted and the default resulted in an impairment or frustration of Casey's work through no fault of Casey, thus triggering the application of section 9.1.3. As we have previously stated:

> Section 9.1.3 requires the D/B Contractor to provide the Owner with notice of any changes or modifications in the work that D/B Contractor believes will entitle it "to a Change Order modifying the Scope of Work, Project Schedule, Contract Price, or other obligations of D/B Contractor under" the contract. Section 9.1.3 places the burden on the D/B Contractor to establish "that it is entitled to such relief under Section 9.1.4, that the relief sought is the minimum relief required, and that any monetary relief requested by D/B Contractor is in excess of any insurance proceeds recoverable by D/B Contractor." Section 9.1.4 provides the circumstances for which the D/B Contractor may request relief under section 9.1.3, including "Any Force Majeure."

*Casey Indus.*, 381 S.W.3d at 595.

The first requirement of 9.1.3 is that Casey provide notice to CPS Energy of any changes or modifications in the work that Casey believes will entitle it "to a Change Order modifying the Scope of Work, Project Schedule, Contract Price, or other obligations of [Casey] under" the contract. "Such notice shall be issued within ten (10) Days after [Casey's] knowledge [of any changes or modifications in the work], and such Notice shall describe such occurrence in detail."

Casey also relies on Article 15 of the contract, which provides the procedures for claims and dispute resolution. Section 15.2 of Article 15 states that "[a] Claim is a demand or assertion by the Parties, as a matter of right, adjustment or interpretation of Contract terms, payment of money, Extension of Time or other relief with respect to the Contract." Section 15.2.2 requires that claims "be initiated within 10 days after occurrence of the event giving rise to such Claim or within 10 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later." Section 15.4 provides the steps for resolution of claims.

In reliance on the above contract provisions, Casey points to the following sequence of events to raise a fact issue on the existence of a change order under subsection (a)(2). First, a September 7, 2005 letter from Casey to CPS Energy in which Casey stated:

> Casey recognizes slippage in numerous [Wheelabrator] engineering, procurement, fabrication and delivery activities that have resulted in a steady trend of negative float variance in the schedule.
>
> . . .
>
> . . . Subsequent to the last Design Review Meeting on August 10, 2005, Casey began an analysis of the schedule to pinpoint known and emerging critical activities that may potentially jeopardize Casey's ability to execute our work in a timely and cost effective manner.
>
> . . .
>
> It is important to emphasize that at this time Casey believes we have managed to minimize the impacts of delays by revising our erection logic. However, events may arise which can't be easily mitigated by simple erection logic changes. Should

events arise which are not caused by Casey, and are beyond Casey's ability to prevent, any schedule recovery efforts would result in comprehensive costs to Casey under the Contract. *Casey will formally notify CPS energy of events as they occur, and detail Casey's proposed actions to mitigate the impact of those events.* [Emphasis added.]

Next, Casey points to its December 30, 2005 letter to CPS Energy in which it stated "the schedule is in jeopardy and . . . extraordinary recovery actions are required at this time." However, Casey stated it held Wheelabrator "accountable for costs associated with the schedule recovery effort," and it "has taken the position with [Wheelabrator] that [Casey] wishes to work out payment of recovery costs with [Wheelabrator] directly, without exercising [Casey's] rights through the Contract." But, the letter continued that, in the event Wheelabrator refused to pay or failed to pay, Casey would "request that CPS exercise *your* rights, through the Contract, to compensate Casey for recovery costs." [Emphasis added.]

The next series of letters indicate an attempt by the parties to resolve the issues. In a July 27, 2007 letter from CPS Energy to Casey, CPS Energy "request[ed] that Casey formally indicate all items that are in dispute as outlined in Article 15.1.1. . . . Upon receipt of this dispute issues letter from Casey, the dispute resolution period for resolution by the Project Managers shall commence." Casey replied on August 3, 2007, listing its various claims and stating that it was owed $12,275,646 in additional compensation. CPS Energy acknowledged receipt of the letter on August 15, 2007. On October 12, 2007, CPS Energy informed Casey that it rejected all of the claims, with the exception of the claim related to air receiver tanks. With some exceptions, CPS Energy's basis for rejecting certain claims was the same: Casey did not file a notice of requested change order within the allotted time under the contract and before the work was performed.

In considering the evidence in the light most favorable to Casey, we note that section 271.153(a)(2) speaks in terms of "the amount due for change orders." A statutory waiver of

sovereign immunity must be construed narrowly and must be clear and unambiguous. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003); TEX. GOV'T CODE ANN. § 311.034 (West 2013). Therefore, we must narrowly construe the Legislature's use of the phrase "change order" to mean only a change order as that phrase is defined in the contract. The contract here defines a "change order" as follows:

> [A] document issued pursuant to Section 9.1 of these General Conditions hereof which (i) describes any change in the Work, (ii) authorizes D/B Contractor to implement such change, (iii) sets forth the price, change in Project Schedule and any other change to the terms and conditions of the Agreement, and (iv) is incorporated into this Agreement when agreed to in writing and executed by the Parties.

We do not believe either of the 2005 letters, even taken together, raise a fact issue on whether Casey submitted or obtained change orders. Further, both of the 2005 letters are clearly outside the ten-day requirement and the December 30 letter speaks in terms of CPS Energy exercising *CPS Energy's* rights under the contract, not Casey exercising its own rights under the contract. Therefore, neither raises a fact issue on the existence of an amount owed for a change order. Nor do we believe the 2007 correspondence raises a jurisdictional fact issue under section 271.153(a)(2). The 2007 correspondence indicates the parties' attempt to resolve their dispute pursuant to the contract's "Claims and Dispute Resolution" provisions as set forth in Article 15 of the contract. Casey's August 3, 2007 letter and its attached list of claims is not a request for or evidence of a change order. Therefore, we must conclude none of the correspondence on which Casey relies raises a fact issue on the existence of an amount owed under a "change order" as that phrase is defined in the parties' contract.

**3. Subsection (a)(2): the amount owed for additional work the contractor is directed to perform by a local governmental entity in connection with the contract**

In the absence of a change order, section 271.153(a)(2) allows compensation for amounts "owed for additional work the contractor is directed to perform by a local governmental entity in connection with the contract." In its motion to dismiss, CPS Energy alleged there was no amount due for additional work because Casey never submitted any change order for Wheelabrator-related delays, or asked for any change order for extra steel or steel painting or any other additional costs Casey now claims. In response, Casey again argued its claims associated with Wheelabrator-related delays were amounts owed under section 271.153(a)(2). Casey asserted Articles 9 and 14 of the contract permit it to seek compensation for these delays and there are numerous fact questions surrounding the claim process as set forth in these articles.

As evidence of work it was "directed to perform by a local governmental entity," Casey again relies on its contention that the contract required it to deliver a "completed project." However, other than a penalty Casey may have incurred for not timely delivering a completed project, Casey points to no evidence of any directive from CPS Energy.[5] While it may be true that Wheelabrator's delays exposed Casey to liquidated damages for not timely completing the project, we believe these penalties alone are not sufficient to raise a fact issue on the existence of "additional work [Casey was] *directed to perform* by [CPS Energy] in connection with the contract."

## CONCLUSION

For the reasons stated above, we reverse the trial court's Order on Motion to Dismiss for Lack of Jurisdiction, and we render a dismissal of Casey's claims against CPS Energy for schedule

---

[5] We note that the contract provides a mechanism for owner-directed work in the form of a "Construction Change Directive," which is defined as "a written order prepared by the Owner whereby the Owner may, without invalidating the Contract, direct Work that the Owner reasonably believes is within the general scope of the Contract requirements and which Owner believes requires no adjustment in the Contract Price or Contract Time, or both, or is issued when the D/B Contractor and Owner are not in agreement over the terms of a Change Order." At the hearing on the motion to dismiss, Casey agreed there were no Construction Change Directives.

compression, additional steel costs, steel painting, and miscellaneous costs for reworking Wheelabrator's work.  The cause is remanded for further proceedings.

Sandee Bryan Marion, Chief Justice