

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

## No. 02-22-00278-CV

———————————————

TEXAS WOMAN'S UNIVERSITY, Appellant

V.

JODY T. RODRIGUEZ, Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 21-9471-431

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I.  Introduction

This is an interlocutory appeal from the denial of a partial plea to the jurisdiction in an employment-discrimination and retaliation case.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).  Appellant Texas Women's University (TWU) seeks to have this court reverse the trial court's order and render "dismissal of [Appellee Jody T. Rodriguez's] equitable claim under the Texas [c]onstitution and dismiss[al] with prejudice [of] Appellee's associational discrimination claim."  Under the unique circumstances presented here, in which the record demonstrates that the trial court concurrently lifted its stay on discovery when it denied TWU's partial plea to the jurisdiction, we conclude that the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively demonstrate incurable defects in jurisdiction.  Accordingly, we reverse the portion of the partial plea order that denies TWU's partial plea and remand the case for further proceedings consistent with this opinion.[1]

### II.  Factual and Procedural Background

#### A.    The Pleadings and the Pleas to the Jurisdiction

In Rodriguez's original petition, she set forth the facts underlying her claims of discrimination and retaliation:

---

[1]Because TWU makes no challenge to the discovery orders contained within the partial plea order, we affirm that portion of the order.

A.  . . . Rodriguez was employed by TWU at all times relevant to this lawsuit before she was wrongfully terminated.

B.  . . . Rodriguez started employment at TWU in November 2013, and she began working at the Jane Nelson Center for Women's Leadership in July 2016.

C.  [Rodriguez's] most recent position at the Jane Nelson Center was Manager - Events and Student Programs.

D.  At all times [Rodriguez] was employed at the Jane Nelson Center, she received excellent performance evaluations.

E.  While employed at TWU, [Rodriguez] has also been the parent, sole[ ]provider[,] and caregiver for her minor daughter, who is a person with a disability.

F.  During her employment at TWU, [Rodriguez] received association accommodations due to her relationship with a person, her daughter, who has a disability.

G.  On March 26, 2020, the Center for Women Entrepreneurs ("CWE") announced a $1 million grant to help women[-]owned businesses in Texas recover from the pandemic, and CWE awarded 100 women[-]owned businesses $10,000 each.

H.  [Rodriguez] was asked to assist in evaluating applications by searching a Taxable Entity website; she was asked to review the grant awardees to try to identify their ethnicity/race; and she advised her supervisors that she could not identify ethnicity/race information simply by looking at a person or learning their name.

I.  Around this time of the announced $1 million grant, Shannon Mantaro notified employees at CWE that they would start working remotely.

J.  Mantaro made clear to employees that as long as they were working, Mantaro did not care where the employees worked from remotely.

K. Sometime in the March 2020 time period, CWE staff received a group email, advising that during the official work day, 8:00 am to 4:00 pm, with the exception of a one[-]hour lunch period, that employees were to remain logged into [S]kype to document their working hours.

L. On April 1, 2020, . . . Mantaro was promoted, Tracy Irby was promoted, and Irby became [Rodriguez's] supervisor.

M. Shortly after these April 1, 2020 promotions, [Rodriguez] had a telephone conference with Irby, who wanted information on how [Rodriguez] had previously been accommodated in her use and reporting on her usage of leave time[] by Mantaro.

N. Irby said she wanted to make sure she understood how the approval process had worked with . . . Mantaro, so she would know how to approve . . . Rodriguez's leave time.

O. In response, [Rodriguez] told Irby that Mantaro had allowed her to make up time she needed off, either after regular work hours or on weekends in order not to exhaust sick time and/or vacation time.

P. [Rodriguez's] daughter's therapeutic riding sessions occurred from time to time during regular work hours and [Rodriguez] would drive her daughter and then work during the sessions.

Q. . . . Irby did not advise [Rodriguez] that any changes would be implemented to [Rodriguez's] work schedule, nor to the way [Rodriguez] was to report her time to Irby prospectively.

R. On July 1, 2020, by email from Irby, [Rodriguez] was told her June 2020 timesheet was rejected, although April and May timesheets submitted with the same information were approved.

S. Although Irby never advised [Rodriguez] she would need to make different arrangements for her daughter's therapeutic sessions, Irby advised that she would not allow [Rodriguez] to make up any time missed if the time was covered under FMLA.

T. Irby also advised that [Rodriguez] would be allowed only 2 hours per day that could be made up for work [Rodriguez] missed; Irby

said [Rodriguez] could use the lunch hour as one of the hours to make up work.

U. [Rodriguez] told Irby that many appointments could not be scheduled outside work hours, but Irby reiterated that [Rodriguez] was not permitted to make up FMLA[-]covered appointments because FMLA leave is unpaid leave.

V. In July 2020, [Rodriguez] emailed Lisa Taylor in human resources at TWU to ask if she would be allowed to make up time missed as had been allowed by other supervisors, but Taylor said it was up to the department supervisor to decide if the time could be made up.

W. In early August[] 2020, [Rodriguez] spoke with . . . Irby about her reluctance to work in-person on campus due to health concerns and fears of increased risk of exposure to [COVID]-19.

X. Irby responded by expressing her understanding and [by stating that] she would check to see what could be done.

Y. Soon after, [Rodriguez] received an email from . . . Taylor in human resources stating that a disability form completed by a doctor was necessary to accommodate the request to remain as a remote worker.

Z. [Rodriguez] submitted paperwork to her doctor, Jayaraman Ravendrin, M.D., who signed and returned the paperwork to TWU.

AA. Shortly thereafter, [Rodriguez] followed up with . . . Taylor who said TWU had everything necessary to process [Rodriguez's] request for accommodation.

BB. When [Rodriguez] followed up later in September, Taylor said they would get to it when they had a chance, and she emailed a few weeks later saying [Rodriguez's] paperwork was still being processed.

CC. Before she was wrongfully terminated, human resources never accepted[] nor denied [Rodriguez's] physician[-]signed disability paperwork.

DD. On August 11, 2020, most JNIWL and CWE staff returned to campus.

EE.   On January 1, 2021, [Rodriguez's] employment with . . . TWU was terminated.

FF.   [Rodriguez] timely filed a charge of discrimination.

GG.   [Rodriguez] received a notice of right to sue from the Texas Workforce Commission on October 14, 2021, which is attached to this pleading.

HH.   [Rodriguez] timely filed this lawsuit.

II.   [Rodriguez] suffered damages due to the illegal discrimination and retaliation.

Rodriguez's original petition then set forth the following claims:

A.   [Rodriguez] was subjected to illegal discrimination, harassment[,] and unequal treatment by [TWU] and/or by agents and employees due to disability[] because [she] was considered by [TWU] to be disabled[] because of her association with a disabled person, in retaliation for her complaints of illegal discrimination, and/or in response to requests for reasonable accommodation.

B.   After complaining of the illegal discrimination, harassment[,] and unequal treatment, [Rodriguez] was subjected to retaliation because of her complaints.

C.   After making requests for reasonable accommodation, [Rodriguez] was subjected to retaliation because of her requests.

D.   [Rodriguez] suffered damages due to [TWU's] illegal discrimination, harassment, denial of accommodations, and retaliation.

E.   [Rodriguez] seeks recovery for her damages suffered due to the illegal discrimination, harassment, denial of accommodations, and retaliation by [TWU].

F.   [Rodriguez] seeks reinstatement to her employment with [TWU].

6

TWU filed an answer asserting various affirmative defenses and also filed a plea to the jurisdiction (hereinafter TWU's initial plea), arguing that "[d]espite her use of certain 'buzzwords' such as discrimination, retaliation[,] and harassment, [Rodriguez's] Original Petition fails to identify or plead any claim or cause of action whatsoever, much less one that the Texas Legislature has clearly and unambiguously waived sovereign immunity thereon."

Rodriguez thereafter supplemented her original petition. In the supplement, she pleaded that "[TWU] is not immune from suit, nor from liability, because the Texas Legislature enacted [Texas Labor Code], Chapter 21, that waives sovereign immunity and waives government[al] immunity for the claims of illegal employment discrimination." Rodriguez further pleaded that her "claims in equity, including for injunctive relief and for reinstatement to employment are allowed by Texas Constitution [Article] I, § 29" and that her "requests for injunctive relief and for reinstatement are allowed by Texas law[] because they are claims in equity against the government and against government officials who acted without legal or statutory authority, which actions are clearly illegal." Rodriguez included a section on injunctive relief in which she pleaded the following:

> B. [Rodriguez's] causes of action against [TWU], including her claims under [Texas Labor Code] § 21.001 *et seq.*, allow for injunctive relief, as all or part of the relief requested requires the restraint of illegal discriminatory acts that are prejudicial to [Rodriguez].
>
> C. [TWU']s violations of [Rodriguez's] rights have inflicted harm upon [Rodriguez], and that harm is irreparable harm.

7

D. [Rodriguez's] injuries and damages are "irreparable" because they "cannot be adequately compensated in damages" or they "cannot be measured by any certain pecuniary standard."

E. [Rodriguez] may have injunctive relief as allowed under [Texas Labor Code] § 21.258, to include an injunction prohibiting [TWU] from "an unlawful employment practice; and [other] additional equitable relief as may be appropriate . . . including reinstatement and back pay[."] [Footnote omitted.]

Rodriguez also reasserted her request for the equitable remedy of reinstatement.

Additionally, Rodriguez filed a response to TWU's initial plea. Rodriguez requested that the trial court deny TWU's initial plea "because the Texas Legislature enacted [Texas Labor Code], Chapter 21, waiving sovereign immunity for the claims of illegal employment discrimination that [Rodriguez] brings against [TWU]" and because "[TWU] also has no immunity on [Rodriguez's] equitable claims for injunctive relief and reinstatement." Rodriguez argued that it was clear from the wording in TWU's initial plea[2] that TWU had been able to glean her claims from her original petition—specifically, that she was alleging that she had been "subjected to illegal discrimination, harassment[,] and unequal treatment by Defendant TWU due to disability." Rodriguez further argued that she had not received TWU's Rule 194 disclosures and that it was therefore improper for TWU to ask the trial court to consider the factual and legal bases of its initial plea.

---

[2]Rodriguez's response points to the following, which was taken from TWU's plea to the jurisdiction: "This is an employment discrimination and retaliation case. [Rodriguez], a former TWU employee, filed this lawsuit alleging illegal discrimination, harassment, and unequal treatment due to disability."

8

The trial court denied TWU's initial plea.[3]

Five days later, TWU filed a partial plea to the jurisdiction

> because [Rodriguez's] Family and Medical Leave Act (FMLA) claim is barred by sovereign immunity[;] because her state constitutional claim for injunctive and equitable relief is duplicative and repetitious and relief already permitted under her TCHRA claim[;] and because as an at-will employee[,] she has no protected property interest in continued employment that can support her state constitutional claim.
>
> Accordingly, these claims are jurisdictionally barred and therefore should be dismissed with prejudice.

Rodriguez then filed a second supplement to her original petition. Rodriguez's second supplement made clear that she was not asserting an FMLA claim; instead, she was asserting a claim under Texas Labor Code Chapter 21, "claims in equity" for violations of the Texas constitution, and a claim for reinstatement.

The following month, Rodriguez filed a response to TWU's partial plea to the jurisdiction. Rodriguez requested that the trial court deny TWU's partial plea "in its entirety" and listed the following reasons:

---

[3]Neither the clerk's record nor the supplemental clerk's record contains an order ruling on TWU's initial plea, but the order denying the partial plea to the jurisdiction states that "the [c]ourt finds [that TWU's initial] [p]lea to the [j]urisdiction was denied on February 25, 2022" and that "the [c]ourt also ruled that discovery was abated until 7-7-2022." Additionally, the record from the hearing on TWU's partial plea to the jurisdiction makes clear that the trial court denied TWU's initial plea because it found that Chapter 21 of the Texas Labor Code applied. *See generally* Tex. Lab. Code Ann. §§ 21.001–.556 (commonly referred to as the Texas Commission on Human Rights Act or TCHRA); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) (agreeing with the intermediate courts of appeals that had held that the TCHRA clearly and unambiguously waives immunity).

9

1.    Rodriguez's claims are within the [c]ourt's subject[-]matter jurisdiction;

2. Rodriguez makes no claim under the [Family Medical Leave Act] ("FMLA");

3.  Rodriguez properly alleges any necessary waivers of immunity;

4.  Rodriguez seeks no legal damages, nor money damages by her claims in equity;

5.    Rodriguez's constitutional and statutory rights may be protected in equity; and

6.    Rodriguez is entitled in equity to seek reinstatement to employment.

Rodriguez stated that her claims for equitable relief and her claims under Texas Labor Code Chapter 21 were properly before the trial court. In addition to requesting that the trial court deny TWU's partial plea, Rodriguez requested that the trial court clarify its prior discovery ruling and order TWU to answer the discovery that she had previously propounded.

## B.    The Hearing on the Partial Plea

The trial court held a hearing on TWU's partial plea to the jurisdiction. During the hearing, TWU's counsel conceded that Rodriguez's "TCHRA claim, Chapter 21 of the Texas Labor Code . . . should go forward." TWU's counsel also acknowledged that Rodriguez had not pleaded an FMLA claim. With that concession and acknowledgement, TWU narrowed the scope of the hearing from the two grounds raised in its partial plea to only one ground: "the claim at issue in the hearing today is

10

on the Texas constitutional claim that we are prepared to go forward with, seeking dismissal of that pursuant to our partial plea to the jurisdiction."

With the scope of the hearing narrowed to solely the state constitutional claim, the trial court allowed Rodriguez's counsel to argue. He responded that even if the state constitutional claim was duplicative of the Chapter 21 claim, he was allowed to plead in the alternative and would be limited by the one-remedy rule. Rodriguez's counsel stated that he might assert new and additional claims once he received discovery responses from TWU. He said that the discovery was "really what [Rodriguez was there] for, Your Honor, because as the [c]ourt noted and [TWU's counsel] agreed, [Rodriguez has] the Chapter 21 claim. The [c]ourt has already denied the plea to the jurisdiction as to that claim. [TWU is] not rearguing that today." The trial court noted the general nature of the Chapter 21 claim, and Rodriguez's counsel responded that "without discovery it is not real clear. And so in terms of what we have to do is give notice. What we're saying is in the pleading my client complained. She spoke out on illegal conduct about a matter of public concern." He further elaborated that Rodriguez had "spoke[n] out about violations of the law, including their violations of the Americans with Disabilities Act, violations of the Texas Labor Code, violations of the FMLA."[4] Rodriguez's counsel reiterated that "if there is any

_____

[4]When the trial court asked if Rodriguez was alleging a First Amendment violation, Rodriguez's counsel clarified that the claim was not a First Amendment claim. He stated that Rodriguez was "asserting a free speech claim under the Texas

11

lack of specificity in the pleadings, it's a function of a lack of discovery." He requested to be able to "get some discovery" so that he could amend the pleadings. He clarified that he was not requesting "tremendously expansive discovery" but was instead "asking for at least a representative deposition, and the two people who were involved in the termination decision, why did you do it."

TWU's counsel presented the arguments from the partial plea as to Rodriguez's state constitutional claim, arguing that the relief Rodriguez requests in her state constitutional claim is already provided for under Chapter 21, that she was an at-will employee and had no greater rights that would have afforded her a constitutionally protected property interest in her employment, and that she had sued only TWU and not a state official in his or her official capacity. Rodriguez's counsel responded that it was not his practice generally to "just sue people claiming ultra vires acts without having some information about what they did" and that he did not want to add a slew of named individuals just to fulfill the requirement. Rodriguez's counsel further argued, "And, with all due respect, we have a protected free speech interest. It doesn't have to be a property interest. We are suing to protect the free speech interest. If we didn't say that sufficiently, what we seek is an opportunity to amend."

---

[c]onstitution. And as we laid out, Your Honor, she spoke out on a matter of public concern, illegal conduct."

12

During the proceeding, the trial court asked for clarification on whether Rodriguez had been terminated due to a reduction in force (RIF). Her counsel responded,

> Your Honor, that's what they say. But the position still exists, and it has been filled. It has been posted[;] they changed the job title and gave all of Ms. Rodriguez's, as I understand it, they gave all of her responsibilities to somebody else. So as far as we know, the allegation of a RIF is a RIF of one. And that's an issue we would like to explore.

Throughout the hearing, the trial court expressed its frustration with both sides' pleadings, stating that they were general and caused confusion. The trial court further stated,

> I don't think it is my role to sua sponte grant special exceptions that haven't been brought before me. But I see at least some cases where I could dismiss the case now for jurisdiction. Enough time has passed, and I just don't find it beyond the general allegation. But I don't want to do that. I don't think, in the scheme of everything that's gone on, that that would be fair.[5]

---

[5]Throughout the hearing, the trial court expressed its concern about the merits of Rodriguez's claims. Because the record was not sufficiently developed for the trial court to resolve the partial plea as to the merits of the claims, the trial court should have refrained from ruling on the partial plea until targeted discovery was completed. *See Univ. of Tex. Health Sci. Ctr. at Hous. v. McNeely*, No. 06-21-00041-CV, 2021 WL 4953238, at *12 n.14 (Tex. App.—Texarkana Oct. 26, 2021, pet. denied) (mem. op.) (stating that "trial courts considering a plea to the jurisdiction have broad discretion to allow 'reasonable opportunity for targeted discovery' and to grant parties more time to gather evidence and prepare for such hearings" but that such process contemplates "alter[ing] hearing deadlines to allow parties the opportunity to respond with evidence" instead of denying the plea to the jurisdiction). Because the trial court failed to follow this procedure, we have no better record before us than the undeveloped record that presented problems for the trial court and which led it to lift the stay on discovery.

The trial court asked Rodriguez's counsel what discovery was needed, and he replied that he needed to be able to take the depositions of TWU's corporate representatives and that he needed TWU's answers to interrogatories.

After considering "the pleadings, the evidence[,] and the arguments of counsel," the trial court denied TWU's partial plea to the jurisdiction and granted Rodriguez's "requested relief" as to discovery. The trial court's order set deadlines for TWU to respond to the interrogatories, requests for production, and requests for admissions; to serve its Rule 194 disclosures; and to present its corporate representatives for depositions.

After ordering the discovery, the trial court stated,

[W]e'll start fresh today with the claims as they exist today[,] and we will go from there.

. . . .

What I am saying today is that, at least as pleaded, there is fair notice of what the claim is. And I anticipate, as I've heard, that as discovery happens, that claim may change or may get more specific.

### III. Analysis

In its first issue, TWU challenges Rodriguez's state constitutional claim on multiple grounds. In its second issue, TWU argues that Rodriguez has alleged an associational discrimination claim that should be dismissed. After setting forth the standard of review, we will discuss each of the issues below.

14

**A.    Standard of Review**

"In Texas, sovereign immunity deprives a trial court of subject[-]matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).  State universities, such as TWU, are considered state agencies for purposes of sovereign immunity.  *See Tex. Tech Univ. Health Scis. Ctr. – El Paso v. Niehay*, 641 S.W.3d 761, 767 (Tex. App.—El Paso 2022, pet. filed) (per curiam) (citing *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976)).  "Because the assertion of sovereign immunity implicates the courts' jurisdiction, immunity is properly raised in a plea to the jurisdiction." *Matzen v. McLane*, No. 20-0523, 2021 WL 5977218, at *3 (Tex. Dec. 17, 2021).

Further,

"Where a government entity challenges jurisdiction on the basis of immunity, 'the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.'" *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015) (quoting *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)). "Whether sovereign immunity defeats a trial court's subject-matter jurisdiction is a question of law . . . ." *Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021).  "We review orders on pleas to the jurisdiction *de novo*." *Matzen*, 2021 WL 5977218, at *3.

Resolution of a plea to the jurisdiction may be on the pleadings or an evidentiary record; "[a] plea to the jurisdiction 'may challenge the pleadings, the existence of jurisdictional facts, or both.'" *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting [*Alamo Heights Indep. Sch. Dist. v.*] *Clark*, 544 S.W.3d [755,] 770[ (Tex. 2018)]).

15

When a plea to the jurisdiction attacks the pleadings, the following principles apply:

- "If a plea 'challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.'" *Id.*

- "In determining whether the plaintiff has met that burden, 'we liberally construe the pleadings, taking all factual assertions as true and looking to [the plaintiff's] intent.'" *Id.* (quoting *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015)).

- "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency[,] and the plaintiffs should be afforded the opportunity to amend." . . . *Miranda*, 133 S.W.3d [at] 226–27 . . . .

- "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227.

The following principles apply to a plea to the jurisdiction that goes beyond a facial challenge to the pleadings:

- When "the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Clark*, 544 S.W.3d at 770–71.

- When a plea to the jurisdiction requires the consideration of evidence, we use a process that mirrors a traditional motion for summary judgment. *Id.* at 771. Thus, the following shifting burdens apply:

16

- "Initially, the defendant carries the burden to meet the summary[-]judgment[-]proof standard for its assertion that the trial court lacks jurisdiction." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

- "If [the defendant carries that burden], the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue." *Id.*

- "If a fact issue exists, the trial court should deny the plea." *Id.*

- "But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law." *Id.*

- "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Clark*, 544 S.W.3d at 771.

- Finally, a trial court may defer the decision on a plea to the jurisdiction: "[w]hether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

We address the question of whether there is jurisdiction on a claim-by-claim basis. *Amador v. City of Irving*, No. 05-19-00278-CV, 2020 WL 1316921, at *7–8 (Tex. App.—Dallas Mar. 20, 2020, no pet.) (mem. op.) ("[T]he Supreme Court has made clear that 'a plaintiff must demonstrate that the court has jurisdiction over . . . each of his claims; the court must dismiss those claims (and only those claims) over which it lacks jurisdiction.'" (quoting *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 152–53 (Tex. 2012))).

*Scribner v. Treger*, No. 02-21-00277-CV, 2022 WL 714654, at \*5–6 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.) (mem. op.).

## B. Challenges to State Constitutional Claim

In its first issue, TWU argues that the trial court erred by denying its partial plea directed at Rodriguez's state constitutional claim. Within this issue, TWU raises several arguments, including that Rodriguez's claim for relief under the Texas constitution is redundant of the relief that is permitted under the TCHRA, that Rodriguez has no protected property interest to support her claim because she is an at-will employee, and that she failed to sue a state official in his or her official capacity. TWU's partial plea challenged the sufficiency of Rodriguez's petition (and its supplements) to invoke the trial court's jurisdiction over her state constitutional claim. Accordingly, we must determine whether Rodriguez met her pleading burden to establish a legislative waiver of governmental immunity.

### 1. Alternative Claims for Relief

At the outset of its first issue, TWU argues that Rodriguez's state constitutional claim is duplicative and repetitious of the relief permitted under the TCHRA. *See* Tex. Lab. Code Ann. § 21.258 (setting forth the types of equitable relief, including reinstatement, that are available under the TCHRA); *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391 (Tex. 2007) (providing that equitable or injunctive relief may be available in some instances to remedy state constitutional violations by a governmental entity).

Rodriguez does not deny that both claims request similar relief.  Instead, Rodriguez argues that pursuant to Texas Rule of Civil Procedure 48 she is allowed to plead alternative claims for relief.  We agree.

Rule 48 provides that

[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses.  When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.  *A party may also state as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds or both.*

Tex. R. Civ. P. 48 (emphasis added).

As Rodriguez's counsel recognized at the hearing, Rodriguez is allowed to plead in the alternative but is limited by the one-remedy rule:  "We are allowed to seek our multiple claims for relief.  And, of course, we are limited by the one[-]remedy rule.  So whatever happens to those alternate claims for relief, we are only gonna get one remedy."

Because the rules allow a party to plead alternative claims for relief, we overrule the portion of TWU's first issue challenging Rodriguez's state constitutional claim on the ground that it is duplicative of relief allowed under the TCHRA.  *See Rushmore Loan Mgmt. Servs., LLC v. Harris Cnty.*, No. 01-19-00758-CV, 2021 WL 3501704, at *4 n.7 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, no pet.) (mem. op.) (stating that appellee "cites no case law or other authority supporting her argument that an

19

alternative claim asserted in a petition is invalid" and that "[t]o the contrary, Texas Rule of Civil Procedure 48 allows parties to plead alternative claims for relief"); *see, e.g.*, *Town of Flower Mound v. Rembert Enters., Inc.*, 369 S.W.3d 465, 481 (Tex. App.—Fort Worth 2012, pet. denied) (op. on reh'g) (holding that the trial court erred by granting appellants' plea to the jurisdiction as to appellee's alternatively pleaded inverse-condemnation claim).

## 2. Failure to Plead a Protected Property Right

In another portion of its first issue, TWU argues that Rodriguez did not dispute that she was an at-will employee at TWU, and thus she has no constitutionally protected property interest that can support a claim in equity, including for injunctive relief or for reinstatement, pursuant to the Texas constitution.[6] Rodriguez did not address this in her brief but argued at the hearing on the partial plea, "[W]e are asserting a free speech claim under the Texas [c]onstitution. And as we laid out, Your Honor, she spoke out on a matter of public concern, illegal conduct. If I didn't set that out specifically enough . . . ." Rodriguez's counsel explained that TWU

---

[6]TWU acknowledges that equitable or injunctive relief may in some instances be available to remedy state constitutional violations. *See Weslaco Indep. Sch. Dist. v. Perez*, No. 13-12-00581-CV, 2013 WL 3894951, at *2 (Tex. App.—Corpus Christi–Edinburg July 25, 2013, no pet.) (mem. op.) ("[S]uits for equitable remedies for violation of constitutional rights are not prohibited." (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995))). TWU notes, however, that "this limited waiver of immunity exists only to the extent the plaintiff has pleaded a viable constitutional claim." *See City of Houston v. Downstream Env't, L.L.C.*, 444 S.W.3d 24, 38 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (op. on reh'g).

does not have immunity if they violated [Rodriguez's] speech rights. And, Your Honor, the circumstances of this termination, there is very little information that [Rodriguez] has. So what we have, we have laid out in the petition. And, again, as I say, I understand the [c]ourt's concern about jurisdiction. But this [c]ourt certainly has jurisdiction. You can look at the Jacobs case out of Fort Worth Court of Appeals.[7] My client, if her rights are violated, she can sue in equity for remedy. This is a court of law, it's a court of equity. So I don't think we're asking for tremendously expansive discovery. But we are asking for at least a representative deposition, and the two people who were involved in the termination decision, why did you do it. And if it's due to speech, that's illegal, Your Honor. And this [c]ourt does have jurisdiction.

Now if I didn't set it out in the petition sufficiently, again, that's an issue for [TWU] to raise. They haven't. And, Your Honor, they have raised jurisdiction.

Later during the hearing, he continued, "And, with all due respect, we have a protected free speech interest. It doesn't have to be a property interest. We are suing to protect the free speech interest. If we didn't say that sufficiently, what we seek is an opportunity to amend . . . ."

Rodriguez thus acknowledged that she may not have sufficiently pleaded "a protected free speech interest." The pleadings, in fact, make no mention of such interest. *See generally Patel v. Rios*, No. 01-20-00856-CV, 2022 WL 3649348, at *8 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, pet. filed) (mem. op.) (setting forth elements of a free speech retaliation claim); *Caleb v. Carranza*, 518 S.W.3d 537, 544 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (same). Because Rodriguez has not yet pleaded a free speech interest, we must conclude that the pleadings thus fail to

---

[7] *See City of Fort Worth v. Jacobs*, 382 S.W.3d 597, 598–99 (Tex. App.—Fort Worth 2012, pet. dism'd).

demonstrate the trial court's jurisdiction over such claim. However, due to the absence of any discovery, we cannot say that Rodriguez has had a full and fair opportunity in the trial court to develop the record as to jurisdiction and amend her pleadings. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 100 (Tex. 2012).

Accordingly, we sustain this portion of TWU's first issue but direct that Rodriguez be afforded an opportunity to amend her pleadings as to the free speech portion of her state constitutional claim.[8] *See City of Albany v. Blue*, No. 11-18-00051-CV, 2020 WL 1623719, at *4 (Tex. App.—Eastland Apr. 2, 2020, no pet.) (mem. op.) (remanding to allow repleading of state constitutional claims).

### 3.     Failure to Plead an Ultra Vires Claim

In the remainder of its first issue, TWU argues that Rodriguez failed to include a state official in his or her official capacity as a named defendant. The entirety of TWU's argument on this aspect of Rodriguez's state constitutional claim is as follows:

> Constitutional claims pleaded against only the state and not as ultra vires claims against an individual acting in an official capacity cannot overcome state sovereign immunity. *Tex*[.] *Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) . . . ; *Bacon v. Tex*[.] *Hist. Comm'n*, 411 S.W.3d 161, 176 (Tex. App.—Austin 2013, no pet.). Despite the filing of an original petition and two supplemental pleadings, [Rodriguez] failed to amend to correct this defect in any of those filings.
>
> Accordingly, the trial court erred in denying TWU's Partial Plea to the Jurisdiction. [Record reference omitted.]

---

[8]In its reply brief, TWU argues, without citing any authority, that Rodriguez has waived her right to amend her pleadings "to include any allegations in her lawsuit that would even remotely support a state constitutional violation claim." As stated above, due to the lack of discovery, we disagree with TWU's waiver argument.

Rodriguez argues in her brief that when a plaintiff is confronted with a jurisdictional plea, she need not amend her pleadings until after the trial court rules on the jurisdictional plea. Rodriguez bases her argument on supreme court precedent:

> The court of appeals sided with [employee], concluding [that] "a plaintiff may stand on his pleadings in the face of a plea to the jurisdiction unless and until a court determines that the plea is meritorious." Thereafter, the court of appeals held[] [that] the plaintiff must be given "'a reasonable opportunity to amend' his pleadings to attempt to cure the jurisdictional defects found" unless the pleadings are incurably defective. Thus, the court of appeals concluded[] [that employee] has not been given a reasonable opportunity to amend his pleadings because the trial court never found merit in Texas A & M's jurisdictional plea.
>
> On this point, we generally agree with the court of appeals. Texas A & M's proposed rule would essentially allow governmental entities the unjust advantage of being not only a litigant[] but also the judge of the plaintiff's pleadings. We decline to adopt such a rule. Thus, we agree that [employee] deserves the opportunity to amend his pleadings if the defects can be cured.

*Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007) (citations omitted).

As noted above, Rodriguez was not allowed to take the deposition of any TWU representative prior to the hearing on the partial plea. Rodriguez's counsel indicated that it was not his practice generally to "just sue people claiming ultra vires acts without having some information about what they did" and that he did not want to add named individuals without doing discovery. The trial court agreed at the close of the hearing to allow discovery, including the depositions of TWU's representatives, to proceed.

23

As the pleadings currently stand, it is undisputed that Rodriguez has not sued any individual. But there is no indication that she cannot remedy this deficiency by amending her pleadings. *See, e.g.*, *Rusk State Hosp.*, 392 S.W.3d at 100 (remanding to allow plaintiffs to amend because defendant had not shown conclusively "by this record"—where no oral depositions of the parties had been taken—either that the plaintiffs had a full and fair opportunity in the trial court to develop the record as to jurisdiction and amend their pleadings or that if the case were remanded to the trial court for further proceedings, they would be unable to show jurisdiction). We therefore sustain this portion of TWU's first issue but direct that Rodriguez be afforded an opportunity to amend her pleadings as to her state constitutional claim.[9] *See City of Albany*, 2020 WL 1623719, at *4.

## C.   Challenge to Associational Discrimination Claim

In its second issue, TWU argues that Rodriguez's associational discrimination claim should be dismissed because it is not a recognized cause of action under the

---

[9]In its reply brief, TWU argues, without citing any authority, that Rodriguez has waived her right to amend her pleadings to sue an individual. Although Rodriguez supplemented her original petition twice, we cannot say that she has waived the opportunity to amend her pleadings to add an individual as a named defendant because of the stay of discovery that was in place and was not lifted until the order denying TWU's partial plea.

24

TCHRA[10] and thus TWU retains immunity as to this claim. TWU acknowledges that it is raising this defense for the first time on appeal.[11]

Rodriguez responds in her brief as follows:

> As a matter of the procedural protections Rodriguez seeks in this lawsuit, she respectfully requests to be allowed to present her associational disability claims in the trial court in the first instance, in order to have a full and fair opportunity to present this claim along with her disability discrimination claim and her retaliation claim under [Texas Labor Code], Chapter 21, which claims were also not challenged by [TWU] in the trial court.

Based on the current status of the pleadings, it is not clear whether Rodriguez has pleaded an associational discrimination claim. To the extent that she might have

---

[10]For purposes of this appeal, we will follow our federal counterpart's recent approach of assuming without deciding that the Fifth Circuit would recognize an associational discrimination claim. *See Worrall v. River Shack LLC*, No. 3:22-CV-0392-B, 2022 WL 3371345, at *6 (N.D. Tex. Aug. 15, 2022) (mem. op. & order) (slip copy) (assuming without deciding that the Fifth Circuit would recognize an associational discrimination claim, setting forth elements, and holding that employee had failed to make a prima facie showing of associational discrimination because his pleadings failed to allege any facts establishing that his wife was disabled within the meaning of the ADA and the TCHRA); *Fisher v. Seton Family of Hosps.*, No. 1:18-CV-1108-RP, 2021 WL 2767295, at *6–8 (W.D. Tex. Feb. 24, 2021) (order) (slip copy) (deciding to follow what other district courts have done and dispose of an associational discrimination claim on the merits when competing summary judgments were filed). *See generally B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017) (explaining that "Texas courts look to analogous federal law in applying the state Act").

[11]When the trial court asked TWU's counsel whether he had conceded that Section 21 applied such that Rodriguez was entitled to discovery on that claim, TWU's counsel's response was as follows: "Judge, of course, subject to subsequent challenges on whether an individual can claim an accommodation on behalf of a family member, which I think is a very valid point that we would agree to and reserve to argue at a subsequent time and provide briefing to the [c]ourt."

attempted to raise an associational discrimination claim, it could be tied to her TCHRA claims for discrimination and retaliation. The record is clear that the trial court previously denied TWU's initial plea seeking to dismiss Rodriguez's TCHRA claims, that TWU did not appeal that ruling, and that TWU specifically excluded Rodriguez's Chapter 21 claims when it limited the scope of the hearing on the partial plea solely to her state constitutional claims. Moreover, due to the stay on discovery that was in place all the way until the trial court ruled on TWU's partial plea, Rodriguez has not had a fair opportunity to address her discrimination issue by developing the record so that she could amend her pleadings. *See Dall. Cnty., Tex. v. Logan*, 420 S.W.3d 412, 431 (Tex. App.—Dallas 2014, pet. denied) ("The supreme court has stated that when jurisdictional issues were not raised in the trial court, the plaintiff may not have had fair opportunity to address such issues by amending her pleadings or developing the record." (citing *Rusk State Hosp.*, 392 S.W.3d at 96)). Furthermore, the trial court made clear that another plea to the jurisdiction or possible summary judgment was not out of the question but was not proper at that time as it wanted to allow the opportunity for targeted discovery to be conducted.

After liberally construing Rodriguez's pleadings in her favor and looking to her intent, we conclude that the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively demonstrate incurable defects in jurisdiction. Therefore, Rodriguez should be afforded an

26

opportunity to amend her pleadings.  *See Weslaco Indep. Sch. Dist.*, 2013 WL 3894951, at *5 (citing *Miranda*, 133 S.W.3d at 226).

Accordingly, we sustain TWU's second issue.

## IV.  Conclusion

Having sustained portions of TWU's first issue challenging Rodriguez's state constitutional claim and having sustained TWU's second issue challenging an alleged associational discrimination claim, we reverse only the portion of the trial court's order that denies TWU's partial plea and remand for further proceedings consistent with this opinion.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  December 15, 2022